## CHARLES L. BOLTON v. JAMES W. LANN.

The general rules, to be observed in ascertaining boundaries or the locality and identity of lands, called for in a deed or grant, are well settled.

Recourse is to be had, 1st, to natural objects; 2nd, to artificial marks; 3rd, to course and distance, (in the order named.) The line of a tract of land may as well be the subject of a call, as any other object; and such a call will control course and distance.

Where the return of a survey, under an order of Court, proceeds upon wrong premises, seeking to make actual surveys yield to rules by which to make surveys, it should be set aside on motion.

See this case as to the proper practice in this State, in respect to the return of a survey under an order of Court, a motion to reject the same, effect of in evidence, &c.

What are boundaries, is matter of law; where they are, is a matter of fact.

And it is a matter of law, which juries cannot control, but which must control them, that where lines of a survey have been run and can be found, they constitute the true boundaries, which must not be departed from, or made to yield to course and distance, or to any less certain and definite matter of description or identity.

A survey is not the only means of proving a boundary line; any witness who knows the fact may be competent to prove the existence of a marked boundary line.

The acquiescence of the proprietors of adjoining lands, in a particular line, is not unfrequently referred to and received as evidence to determine their boundaries.

Prior possession is notice of the claim of the person in possession, to the purchaser of adjoining lands; and the case ought to be one of very clear right, to warrant such purchaser in disturbing the boundaries adopted by the former proprietors, as evidenced by their express or tacit consent.

The Court reversed the judgment in this case, on the ground that the verdict was manifestly contrary to law and the evidence, on a question of boundary.

Appeal from Wharton. This was a suit by the appellee against the appellant, to establish a boundary line. A tract of land containing two leagues was granted to Alexander Jackson, on the 16th of July, 1824, on the eastern margin of

the Colorado river, beginning at a cotton wood, six inches in diameter, marked A. J., 20 varas from an elm, 20 inches in diameter, to the N. 20 E., "adjoining on the S. E. the lands "of William Kincheloe." January 12th, 1835, partition between the heirs of said Jackson, into three lots, by lines running back from the river. Lot No. 1 beginning at the lower corner of said two league tract, on the left bank of the Colorado river, which is also the upper corner of a league granted to William Kincheloe, being a cotton wood 30 inches in diameter, marked A. J., from which an elm 20 inches in diameter bears N. 20 E. 20 varas ; thence N. 20 E. along the lower line of said two league tract, crossing Peach creek and the West Bernard, sixteen thousand eight hundred and fifty varas to the N. E. corner of said two league tract, is a post in the prairie ; thence N. 70 W. one thousand six hundred and twenty-seven varas to a corner, which is a post in the prairie ; thence S. 13 1-2 W. six thousand six hundred and eighty-seven varas to a corner ; thence S. 20 W. nine thousand eight hundred and eighty varas to the Colorado river ; thence down the river with its meanders, to the place of beginning. Lot No. 2, beginning at a point on the left bank of the Colorado river, eight hundred and forty-one varas in a *rectangular* line from the lower corner of said two league tract, being also the upper corner of lot No. 1, thence at 20 E. &c., same as upper line of lot No. 1. This suit was brought to establish the division line between lots No. 1 and No. 2. The plaintiff owned the former, and the defendant the latter. The decree of partition referred to a plat as part thereof, made by the Surveyor appointed by the Court, and on the face of said plat was the following memorandum signed by the Surveyor or his Deputy : " the river league was found to measure 2619 varas wide at the out end, consequently each tract should be 873 varas wide." The two league tract consisted of one rectangular league on the river, and a second in the rear, not in a rectangular form.

The plaintiff introduced in evidence a grant, dated July 16,

1824, by same officers who issued the Jackson grant, to Robert Kuykendall, for a league of land on the western margin of the Colorado, " in front of the land of Alexander Jackson, and at " a point upon the same western margin of the river Colorado," which is made a corner in front of the corner made as the south-east corner of the land of Alexander Jackson, and the south-west of the land of William Kincheloe, and to the south 20 west of that corner, the Surveyor commenced the measurment of this league, and from thence measured S. 20 W. &c.

The plaintiff then introduced Virgil A. Stewart, who testified that at the request of the parties concerned, he had made search and endeavored to find the upper line of the Kincheloe league ; that, for that purpose, he went on the west side of the river, and traced the lower line of the Kuykendall league to the river ; that this line was plainly marked, but that no corner on the river could be found ; that he fixed a signal on the west side of the river, and, coming on the east side, found a cotton wood with some marks on it, about two and a half feet in diameter, near the bank, directly on the course of the line he had traced on the other side ; that, following the same course on the east side of the river, he found what appeared to be a line ; at a distance of about twenty varas on the line, he found an elm with a single hack, an old mark ; further on, he found an old oak marked and a pecan, and some few other trees, say seven in all. There appeared to have been fire through there. The marks upon the line appeared to be old, but witness, not being acquainted with the kind of timber, could form no positive opinion as to the age of the marks. He followed the direction for three quarters of a mile. This line is some sixty varas above the corner fixed by Prissick, as the upper line of the Kincheloe league. Witness found the lower line of the Kincheloe league, beginning at the lower corner on the river ; the corner and bearing trees are all there ; and the line plainly marked ; and the marks very old. This line was, at the river end, about 150 or 160 varas below what witness

calls the Prissick line. By measuring across the Kincheloe league 2450 varas, and running to the river a line parallel with the lower line, as the upper line of the Kincheloe league, witness believes it would allow plaintiff all the land he claims, without touching the lands of the defendant. The Kincheloe league would fall short in quantity, taking the most favorable lines, owing, as witness believes, to a large bend in the river into the end of the league, which did not appear to have been meandered; but it would not lack in width at the river end. The corner, set by Prissick, as the upper corner of the Kincheloe league on the river, was some 200 or 300 varas above the little old field on the Kincheloe league.

Plaintiff gave in evidence the original title to Kincheloe.— It commenced at its lower corner on the Colorado river, calling for marked tree and one bearing tree, ran out from the river at N. 20 E. 11,016 varas to a pecan, 12 inches in diameter, marked W. K., and a distance of six varas from an ash to the South; thence N. 70 W., 2450 varas to a pecan in the prairie; thence S. 20 W. 10,616 to the river Colorado, at the lower corner of league No. 2, measured for Alexander Jackson, which is a cotton wood, &c., (same as in title to Jackson,) thence down the river with its meanders to place of beginning. This title was dated July 8th, 1824. The plaintiff's deed from Esther Jackson Thatcher, to whom the lot No. 1 was partitioned, conveyed him eight hundred acres off the river end, and called to join the land of defendant, who had purchased lot No. 2.

The plaintiff then introduced the report of the Surveyor who had been appointed by the Court to make a survey. The report, in the first place, stated some reasons for believing that the corner of the Jackson and Kincheloe surveys, on the river, had never been marked, and then continued as follows: The Surveyor then examined the survey of each of the three divisions into which the Jackson league was separated by the partition deed amongst the heirs, and, upon tabling the surveys, he found that

Tract No. one was 840,77-100 varas wide, 16,638,955
Tract No. two was 838,73-100 varas wide, 16,645,851
Tract No. three was 720,37-100 varas wide, 15,050,976

Which would make the league 2399,87-100
    varas wide, - - - - - - - - - - -  48,335,782

By the plat attached and made part of the partition deed,
the league is stated, as by the Surveyor measured and found,
to be 2619 varas wide ; leaving uncalculated for, amongst the
heirs, a width of 219,23-100.    Yet by the wording of the sur-
vey of tract No. three, of the partition, this balance of 219,23-
100 varas falls into that tract, as the Surveyor commences on
the opposite side of the land, to where he commenced survey-
ing for tracts number one and two, and states that his survey
of said tract number three is bounded by the land of tract
number two, although by his metes and bounds, the Surveyor
could not come down to tract No. two, by the width of the
said 219,23-100 varas.    (The survey of lot No. three called
to commence at the upper corner of the league, and run out,
across and back to the river, by certain course and distance,
and called to join lot No. two.)    The plat attached to the
partition deed has the numbers 873 written acres each lot,
evidently purporting that such was the width of each, on the
river league, and also on the plat sheet the Surveyor states
that he had " measured the league across at its outer end and
" found it to be 2619 varas wide, and that consequently each
" tract should be 873 varas wide."    On an examination of the
title deed of the land claimed by J. W. Lann, the claim com-
mences on the lower line of the Jackson league and extends
873 varas in width, as the front on the river, of tract No. one.
And on an examination of the record of the claim of C. L.
Bolton, his claim commences 873 varas from the same lower
line of the said Jackson league.    This record purports to be
a conveyance of the front on the river, of tract No. two ;
whilst by the field notes of the partition, tract No. one has a
front on the river of 840–77-100 Spanish varas.    (Chain of

Austin of 27 feet 10 inches, now 27 feet 9 inches.) And the Surveyor gives further evidence that he intended this tract No. one, to be no more, for which see partition deed for tract No. two, to wit : partition survey of tract No. two " commenc- " ing in a rectangular line 841 varas from the corner of tract " No. one." Now, though this is an error, as the corner of tract No. one is not in a rectangular line at all, from the corner of tract No. two, and is really more than 1200 varas from it, yet, as the corner of tract No. two is 841 varas in a rectangular line from the lower line of tract No. one, that, it seems to the Surveyor, must have been his meaning.

After this patient examination of records, the Surveyor considered himself competently acquainted to commence the field work.

Firstly by crossing the Colorado river to bring across a continuation of a line of two surveys on the west side of the river, between the claims of Gallagher and Kuykendall, as by the maps of surveys for the District, the starting point or corner post of the Kincheloe and Jackson leagues, should be opposite this place and on the course. This Gallagher and Kuykendall line, when found, ended at a bluff lower bank of the river, where the river was undermining, and no corner or test trees were found, and the Surveyor was satisfied that the river had advanced upon the land upon this west side ; but on looking over to the east bank, the Surveyor saw no evidence that such a process was going on, or had been, for years, on that side. The river was, at this place, narrower than usual, if anything, and timber was growing to the water's edge. After establishing this point, the Surveyor crossed the river, and could find no sure evidence of a line on said east bank of the river, from this point or near thereto. Some old blazes were found, but no Surveyor's line.

The Surveyor then examined at the river end of the said Jackson league, for its upper or N. W. line, but found it not.

As no known points could be found on the river end of the

league, the Surveyor went to the outer or prairie end of the
Kincheloe league, and from the Singleton, Philips and Kinche-
loo line (lower line of the Kincheloe league) measured along
the end line of the Kincheloe N. 70 W. (var. 10 E.) 2295
varas, which line was over twenty-six years old and well
marked ; fifty yards beyond this, he entered the open prairie,
and at 2450 varas (that being the width of said Kincheloe
league) the Surveyor turned his compass S. 20 W., and at the
edge of the woods, 20 varas to his right hand, found an oak
tree blazed fore and aft, and having the marks of having once
had letters placed on the west side, one which appears to have
been A ; which the Surveyor concluded to be a fore and aft
tree on the cross line of the surveys, and accordingly set post
in the prairie S. 26 W. 10 1-2 varas from a pecan tree marked
x T x, and for the N. W. corner of the Kincheloe league.

The Surveyor then went to the river end of the Kincheloe
league and found the lower river line of the said league, and
ran across the league N. 70 W. 2470 varas, and set post on
the river, 10 varas from the margin, from whence a red oak,
&c. ; thence N. 20 E. (var. 10,39 E.) at 3726 varas crossed
road, at 8198 crossed Peach creek and set a post &c., at 10,556
came to N. W. corner of the Kincheloe league, a post from
whence a pecan tree marked x T x is S. 26 W. 10 1-2 varas
distant.

The Surveyor having run the line between the Kincheloe
and Jackson leagues, commenced an examination of the divi-
sion line between Messrs. Lann and Bolton, and found at 874
varas from the side line, that the Surveyor under the partition,
had run an old line fourteen years old and not above sixteen
years old, which line the present Surveyor found in the timber
at the edge of the prairie. The said line was followed up to
cleared land on the west of Peach creek ; and after passing
Peach creek the line was only to be found on one ash tree 590
varas from the river. Almost all the large timber had been
cut down on this side of Peach creek, so that if a line had been

run thus far across the creek, it would be lost; but at 590 varas and up to the cane brake, no timber had been cut down, yet no line of the partition had been carried through. (Other lines of eight and twelve years were found.) This old line must have been pointed. and not run through to the river, and so pointed for the divisional line between tracts No. one and two. And at 873 varas N. 70 W. from this line another line was found, also pointed and not run through to the river, for the divisional line between No. two and three. These pointed divisional lines varied to the west, running S. 20° 20' W.; 20' from the parallel lines on either side of the league, and consequently would, had they been run through, have made tract No. one 36 varas wider, and tract No. three 36 varas narrower than the Surveyor meant to give them. As the Surveyor under the partition had not run a division line so far down as to the dividing line between Messrs. Lann and Bolton, the Surveyor set post at a distance of 873 Spanish varas, (of the chain of Austin, 27 feet 10 inches, the measure in use at the time of the partition,) in a rectangular line from the lower line of the Jackson league from whence a hackberry, &c.; thence N. 20 E. (var. 10° 39' E.) 4327 varas, along the land of the said Bolton, to the N. W. corner post of the land of the said J. W. Lann, from whence a pecan tree, &c.; which corner post is the N. W. corner of the land of J. W. Lann, and consequently the outer end of the dividing line between Messrs. Lann and Bolton's land, and said corner post being 873 varas, of the chain of Austin, from the division line (S. 70 E.) of the Jackson and Kincheloe leagues; which finished the field work of the survey ordered by your honorable Court.

The Surveyor reports as the result of his work :

1st. That the dividing line between the Kincheloe and Jackson leagues was never run through, or if run, the line was never blazed.

2nd. That the dividing lines of the divisional tracts amongst the heirs of Jackson, were never run through.

3rd. That the Kincheloe league, at its outer or prairie end, has a width of 2470 varas, and that, as the upper line was parallel to the lower line of the league, the corner post should be at the same distance from the lower line, on the river end, as it was found to be at the prairie end, to wit: 2470 varas; and so the Surveyor has placed it on his survey, being governed by the marks and blazes found upon the upper line, as shown in the foregoing report, March 12, 1851.

The plaintiff then introduced one of the men who carried the chain, in Prissick's survey, and who testified that in making said survey they measured across on the Jackson league, from the line run by Prissick as the upper line of the Kincheloe league, and found another line, which they followed towards the river; that meeting with difficulties, they made offsets of some considerable distance, and after passing the difficulties referred to, measured back the same distance of the offsets, and continued the same course to the river. In running towards the river, they entered the field of the defendant about thirty-seven varas above defendant's fence; that in passing through the field towards the river, the space between the place where they run and the fence became narrower, and at the end of the field it was about thirty varas to the fence, as witness supposes, though he does not know exactly. The length run in the field was 1600 or 1800 varas.

Plaintiff then introduced a witness who testified that defendant took possession in January, 1847; plaintiff in May, 1847; Mrs. Thatcher was then a married woman and had been ever since; first improvement made in 1843; fence placed where it stands in 1843; was placed by witness on what he was told was the line; witness put the fence as near on a line with a tree, pointed out to him in the cane, as he could guess; no intention of encroaching on Mrs. Thatcher's land; defendant was in possession cultivating the land in dispute when the plaintiff purchased; no improvement on plaintiff's land when he purchased.

Defendant then introduced a witness who testified that in 1849, plaintiff cleared his land up to fence of defendant, and applied to defendant for permission to join his fence to that of defendant; which was granted, and plaintiff did join his fence to that of defendant, and they have so continued since.

Defendant then introduced James B. Collinsworth, who said that he was the Surveyor of this District; had been acquainted with surveying in this country many years; some years since, found and traced a line which witness believes to be the upper line of the Kincheloe league, from outer corner in the prairie to the river; found no difficulty in tracing the line; said line strikes the river at the upper corner of the little old field spoken of by the witness Stewart; he there found a cotton wood tree marked with the letter K. On cross-examination, said the cottonwood was marked with a letter, and witness feels confident it was K.; his investigation was made at the instance of Thatcher and others, and were discontinued because Thatcher became dissatisfied with witness' surveying.

Defendant then introduced Lemuel Calloway, who said he was well acquainted with surueying; knows where the lower line of the Kincheloe league is; at the instance of defendant, he measured directly across the Kincheloe league, commencing at about a mile and a half from the river, and found it to be 2653 varas from the lower line of the Kinchloe league to the fence between Edwards and Lann, which was recognized as the upper line of the Kincheloe league; found the true lower line of the Kincheloe league to be one hundred and seventy-seven varas below the Prissick line; witness then measured from the lower edge of the Lann tract, across the same to the fence of defendant, and found the distance to be 855 1-3 varas.

Defendent then introduced Angus McNeil, who said that he, the witness, settled at the Bolton place in 1840, and occupied it until 1845; cleared the land; purchased the land from G. Edwards; instructed his overseer to put the fence on the line, and if not so done, it was through inadvertence.

Defendant then introduced his title, which called for its lower line at 873 varas from the division line of the Kincheloe and Jackson leagues.

The foregoing was all the evidence in the case. The instructions asked by each party were given, and the jury found a verdict for the plaintiff, establishing the Prissick survey ; upon which there was judgment ; motion for new trial overruled.

The defendant, on the return of the Surveyor's report, had excepted to it and moved its rejection on the ground

1st. That it shows that the same was not made in conformity with the pleadings in the case and the order of Court, in that it does not show that the upper line of the Kincheloe league was ascertained and established in a correct and legal manner.

2nd. It appears from said pretended survey, that the Surveyor who made it, was governed by his own notions of what previous surveys ought to have been, instead of what they really were.

Which motion was overruled, and "it is ordered that the "said survey.and report be received and acquiesced in by the "Court." No bill of exceptions.

When the report was offered in evidence, the defendant again objected to it, on the same grounds, which objection was overruled, and defendant excepted. · There was also an exception to the admission of the title to Kuykendall, on the ground of irrelevancy. The trial was at the Spring Term, 1853.

*J. B. & G. A. Jones*, for appellant. I. Appellant insists that his exceptions to the pretended survey by Prissick ought to have been sustained.

Not only should the exceptions to this survey have been sustained in the first place, but it was error in the Court below to admit the survey or report as evidence upon the trial.

II. It was certainly erroneous to admit the grant to Kuy-kendall.

III. The Court erred in refusing to grant a new trial, upon the grounds alleged in the motion. The verdict of the jury was manifestly against the evidence. The width of the Kincheloe league is 2450 varas. If the upper line had become obscure, the only way to ascertain its true position would be to run the lines anew, according to the calls in the field notes. The lower line of the league was plain, though Prissick did not find it. Stewart and Calloway, who were both Surveyors, found the lower line, and found it 176 varas below the line adopted by Prissick as the lower line. And by measuring across the league from the true lower line, it was found to be 2653 varas to the fence between Edwards and Lann, which had been supposed to be the upper line of the K. league, instead of 2450, called for in the grant. And measuring even from that fence across Lann's tract, it was found to be 855 1-3 varas, instead of 841 called for by the field notes. So that even allowing the Kincheloe league 203 varas in width, more than it is entitled to, the plaintiff would still have 14 varas more in width than he had a right to claim. Stewart testifies that allowing the Kincheloe league its full width, still the plaintiff would have all the land he claims without interfering with the defendant. But the evidence of the District Surveyor Collinsworth puts the question of the upper boundary of the Kincheloe league beyond dispute. He knew the line and had traced it, and it strikes the river at the upper corner of the little old field spoken of by the witness Stewart, and this little old field, Stewart says, is on the Kincheloe league, and that the corner fixed by Prissick, as the upper corner of the Kincheloe league, is some two or three hundred varas above this old field ; and this is readily accounted for when we consider that Prissick commenced 150 varas above the lower line of the Kincheloe league, and then allowed 20 varas more than it was entitled to.

Again, the fence of Bolton had been placed on the line in the year 1840 ; had remained there all the while; was there when plaintiff purchased. He knew that Bolton was cultivating and claiming the land ; and the fence was long afterwards acquiesced in and recognized by plaintiff as the true line.

*G. Quinan*, for appellee. The exceptions to the Surveyor's report were properly overruled. If it could be explained by extrinsic evidence, if it could be shown by testimony aliunde, that the results reached by the Surveyor were in the main correct, however inadequate or fallible the means resorted to, we must presume that such testimony was offered, and that it was satisfactory, in the absence of any statement of facts occurring upon the trial of the motion to reject the Surveyor's report. (13 Tex. R.)

The report of the Surveyor was admissible in evidence—it had been acquiesced in by the Court.

The Kuykendall grant was admissible. It was a grant made at the same instant, by the same grantors, of adjoining lands, called for the corner in dispute here, and tended to establish it. It was an ancient survey. It was in effect the declaration of the grantors under whom these parties claim, made at the time of the grant, as to the true boundary. (2 Harris, Pa. R. 60 ; U. S. Digest, Tit. BOUNDARY.)

There was no error in the Judge's charge. The verdict was supported by the testimony. In determining the Kincheloe league line, Prissick shows he was governed by the marks found. Whether he committed errors in his arguments or his measurements is immaterial ; it is abundantly shown that his errors are not to the appellant's prejudice.

The partition deeds of the Jackson league show the several lots to be 873 varas wide. This is recognized by the deed from Edwards to Bolton as the true width. At the distance of 874 varas from the line established by Prissick, is found the trace of the line "pointed but not run through " by the Sur-

veyor under the partition deeds, at the upper line of lot No. 1. At the distance of 873 varas farther on, is found the trace of the line pointed, but not run through by the Surveyor, as the upper line of lot No. 2. Does not this establish at this point, beyond question, the correctness of the line established by Prissick, for the upper line of the Kincheloe league? And having found these lines, the Surveyor ought to have adhered to them rigidly. This divergence from them however gives to Bolton 36 varas greater width at the river end of his tract, and he cannot complain of it.

Now take in connection with this, the testimony as to the Kuykendall grant and the corner indicated by it. The said partition lines, had Prissick run them through according to the course of the lines, would have fixed them higher up the river by 36 varas, as estimated, than the line fixed by him.— The point indicated by following the Kuykendall line was also higher up the river by about the same distance. And at that exact point, was found the cottonwood as called for in the patent for a corner, and the elm in the precise course, and at the precise distance and of the precise dimensions called for in the patent. It cannot but be a matter of astonishment that the palpable evidence afforded by the Kuykendall line, by the partition lines, by the marked trees, that this was the true corner, should have been disregarded. As it is, however, it was disregarded for Bolton's advantage.

But it was attempted to be shown by Collinsworth, that the true line of the Kincheloe league was below that fixed by Prissick. Now, Collinsworth swears to his belief, upon his recollection of a survey made by him many years before, and shows that he could not have found the true Kincheloe line, for that traced by him led him to a cottonwood marked, as he thinks, K, while the true corner called for the marks A. J.— And again, his survey was unfinished because the very parties to whose land he was adding some 200 or 300 yards in width, were dissatisfied; and his error is shown by referring to the

partition papers of the Kincheloe league, (see old record, page
—,) where it will be seen, that lot 8, on the upper line of that
league, is 215 varas wide, and has for its lower corner a cot-
tonwood marked 8, which might very well be the corner found
by Collinsworth. (A complete transcript had been returned
in obedience to a certiorari ; and it did not contain the papers
referred to.—REPS.)

A very conclusive circumstance to show that this survey
does not conflict with Bolton's just rights, is found in the fact
that his deed calls for marked lines, trees and corners, sur-
veyed many years before, and had Prissick encroached upon
them by his survey, doubtless some testimony would have been
offered to show it. But this was not done.

We submit then that the verdict of the jury was fully war-
ranted by the testimony. And if it were possible that this
Court might upon that testimony have arrived at a different
conclusion ; yet as it was the determination of the jury upon a
matter peculiarly for their cognizance, it cannot be disturbed.

WHEELER, J. The general rules, to be observed in ascer-
taining boundaries or the locality or identity of lands, called'
for in a deed or grant, are well settled. Recourse is to be
had, 1st, to natural objects ; 2nd, to artificial marks ; 3rd, to
course and distance. The line of a tract of land may as well
be the subject of a call, as any other object ; and such a call
will control course and distance.

Assuming that it is true, as the plaintiff avers, that the di-
viding line between himself and the defendant, has been ob-
scured and lost by accident and the lapse of time, and cannot
be ascertained but by an actual survey, and that it is depend-
ent upon, and controlled by, the dividing line between the
Kincheloe and Jackson leagues, the first point, to be ascer-
tained by the Surveyor, was the true position of that dividing
line. But he, it seems, commenced his work, if not upon the
assumption, certainly with the predetermination, that it had

never been run. Proceeding, as he did, upon this conviction, it was not unlikely that the result of his labor would be to verify it; especially as he did not set about searching for and finding the other lines of the surveys, some of which, at least, were well defined and known. The lower river corner, and the lower line of the Kincheloe league, were plainly marked and defined, and well known. From these, aided by the calls of the grant, there could be no difficulty in ascertaining where the upper line was, or ought to be. The actual marked lines and calls of the survey, were more certain and reliable means by which to ascertain the true position of a lost line of that survey, than its supposed conformity to other surveys upon the opposite side of the river.

Again, if the dividing line between the plaintiff and defendant was never run, or cannot be found, and recourse must be had to the calls of the deed of partition between the heirs of Jackson, to ascertain the river corner of lots one and two, the calls of the deed must, of course, control and fix that corner. The plaintiff claims under that deed and is bound by it. If course and distance, as therein called for, are the only means by which to ascertain his boundaries, these must determine them. His conveyance gave him the rights of his vendors and no more.

It is indisputable that the Surveyor adopted a different line from the true one, as the lower line of the Kincheloe league. There is as little doubt that he was in error, also, as to its upper line : that is, the dividing line between that and the Jackson league : and, consequently, he was in error as to the upper line of lot one, at the front or river end, between the plaintiff and defendant, even though he were justified by other matter of description contained in the partition deed and annexed plan, in giving a greater front on the river to that lot, than called for in the deed. His report is, upon its face, obnoxious to the objection taken to it, that his examination and labors appear to have been too much directed to the ascertain-

ment of where the lines of the survey ought to have been, rather than to the finding of where they really were. The latter, which was the primary consideration, appears manifestly to have received too little of his attention. And for this reason, his report ought to have been set aside.

But if not for reasons, appearing upon its face, still, when it was proved by the plaintiff's witness, Stewart, that the Surveyor was so wide of the mark of finding the lower line of the Kincheloe league ; and by the defendant's witnesses, Collinsworth and Calloway (the one the District Surveyor, and the other, as he states, well acquainted with the business,) that he was not only mistaken as to the lower line, but, in all probability to say the least, equally so, as well in supposing that the upper line had not been run and marked, as in reference to its true position, the report ought certainly to have been excluded from the jury, or wholly disregarded by them. It ought to have been rejected because it proceeded upon wrong premises ; it sought to make actual surveys yield to rules by which to make surveys. And the verdict of the jury, which was based upon it, ought to have been set aside, for the same reason ; not that it was against a preponderence of evidence merely ; but because it was contrary to law and the evidence. What are boundaries, is matter of law ; where they are, is a matter of fact. And it is a matter of law, which juries cannot control, but which must control them, that where the lines of a survey have been run and can be found, they constitute the true boundaries, which must not be departed from, or made to yield to course and distance, or to any less certain and definite matter of description, or identity. The law upon this subject is well settled, (see authorities cited in George v. Thomas, *supra*,) and its maintenance is essential to the security of titles. As was said by Chief Justice Gibson in Blasdell v. Bissell, (6 Burr, 259,) " the lines actually traced on the ground, as shown " by the land marks, and not those produced by the courses " and distances, constitute the boundaries of the grant," wheth-

er by the government or by an individual. "The calls of a "survey, and not its courses and distances, are to govern : and "where there are actual lines of demarkation, the compass and "chain are no more than instruments to point them out."— "Carelessness of chain carriers, roughness of surface, varia- "tion of the compass, imperfection of the instrument, unskill- "fulness in the use of it, and other causes, not to be enumer- "ated, inevitably produce, in every instance, more or less un- "certainty of result ; and if we suffer ourselves to be governed "by the compass and by measurement, collisions would be in- "cessant."

The importance of finding the lines actually traced upon the ground, was not sufficiently regarded in executing the order of survey, or upon the trial. There is little cause to doubt, that the dividing line between the Kincheloe and Jackson leagues, had been actually run and marked, and might have been found and proved by competent means : a survey, of course, is not the only means ; any witness who knows the fact, may be competent to prove the existence of a marked boundary line. When found, there can be no difficulty in ascertaining the dividing line between the plaintiff and defendant, from the calls of the deed of partition, if it cannot otherwise be found and traced. Should this become necessary, all the calls must of course be regarded.

It is unnecessary, as the case is now presented, to express an opinion as to the effect upon the rights of the parties, of the defendant's prior possession, the occupancy of the lot he claims, and the acquiescence of the plaintiff and those under whom he claims in that possession and occupancy. The evidence, upon another trial, may supersede the necessity of inquiry upon that subject. It may be observed, however, that the acquiescence of the proprietors of adjoining lands, in a particular line, is not unfrequently referred to and received as evidence to determine their boundaries. Prior possession is notice of the claim of the person in possession, to the purchaser of adjoining lands ; and the case ought to be one of very clear

right, to warrant such purchaser in disturbing the boundaries adopted by the former proprietors, as evidenced by their express or tacit consent. It will suffice for the present disposition of the case, that the verdict was manifestly contrary to law and the evidence; and the Court therefore erred in refusing a new trial, for which the judgment must be reversed, and the cause remanded.

Reversed and remanded.