W. M. BOOTH, v. H. L. UPSHUR, AND OTHERS.

Where several descriptive objects are specified in a grant or survey, and an effort is made to identify the land by following the calls, and some one of the objects varies from the description of it in the grant or survey, proof of such discrepancy must first be made before other evidence in explanation of it can be admitted.

But where such discrepancies are shown to exist, a question of fact is fairly raised for the jury to decide, in the light of all the surrounding circumstances adduced in proof, as to which one of the objects expressed in the grant or survey most truly indicates to their minds the locality of the land in question.

The effect of calls found in a grant, and the comparative weight or importance to be given to one rather than another, are not established by law : Wherefore, the controlling call cannot be determined by merely looking at the face of a grant containing many calls.

Though courts have generally agreed that amongst a diversity of calls, preference, every thing else being equal, is to be given first to the natural objects called for, next to the artificial objects, and lastly to the course and distance indicated ; yet, when a discrepancy among the calls is established, and the circumstances in proof show that course and distance are the most certain and reliable evidence of the true locality, then course and distance will prevail.

A discrepancy between the calls in a survey being established, and evidence being offered to prove error in the initial point called for, and to show its true position, it is error to exclude such evidence and to instruct the jury that they must presume the initial point to be at the place designated in the survey.

The testimony of the surveyor who made the survey is admissible to prove error in the establishment of such initial point, and to explain how such error originated ; and also to show its true position as ascertained by him. since the running of the survey.

Where a survey lying between two older surveys calls for lines in each of them, and also for quantity, course and distance, and such survey is delineated not by permanent or well known monuments, but by calls which may be supposititious, and the area of such survey is not sufficient to comprise all the space between the two other surveys for which it calls, its true locality is to be determined by the jury according to the relative prominence, certainty, and notoriety of its several calls. .

Where a party has filed land certificates or scrip with a district surveyor for location on vacant land, and afterwards withdraws such files and substitutes other certificates in their stead, it seems that he loses the benefit of his original entries, and his new files will only date from the time of the substitution.

ERROR from Travis. Tried below before Robert J. Townes, Esq., special Judge.

This suit was instituted by the appellant, Walter M. Booth, in the District Court of Travis county, for a mandamus to compel the defendant Upshur, District Surveyor of Travis Land District, to survey several tracts of land in Travis county, which the plaintiff alleged were vacant lands upon which he had located sundry land warrants and certificates. Several other persons were made defendants on account of their claims to portions of the lands claimed by the plaintiff under his entries; and as to them, plaintiff prayed that he might be quieted in his titles, &c. With the exception of J. A. Black, these defendants were the owners of contiguous tracts, and in their answers denied that the lands claimed by plaintiff were vacant or subject to location as public domain; but on the contrary, as they averred, they were comprised in the tracts of which they were respectively the owners.

The defendant Black alleged that the lands in question were vacant, but that previous to the plaintiff's entries upon them, he had filed with the District Surveyor certain certificates and scrip for location upon portions of such vacant lands, which certificates and scrip he had afterwards, and subsequently to plaintiff's entries, withdrawn, but at the same time had substituted therefor other certificates and warrants, under which he now claimed; and he prayed that the surveyor be required to make the surveys for him accordingly, and that he be quieted in his titles, &c.

In order to establish that the land in controversy was vacant and subject to his locations as public domain, the plaintiff introduced as a witness John Harvey, who made the contiguous surveys, by whom he proposed to prove that the beginning corner of the Caples league, upon which the surveys of that and the other surrounding tracts were dependent, was located erroneously by the witness in making the surveys, and that its true position was at a different point than that designated in the field notes.

The court below excluded this evidence, and instructed the jury that they must presume the initial point of the Caples survey to be at or near the locality designated in the survey.

I. A. & G. W. Paschal, for the plaintiff in error.

5

*Hancock* and *West*, for the defendant in error, insisted that there was no error in the charge of the court below, or in the exclusion of the evidence offered by the plaintiff, and cited 1 Pet. Con. R., 337; 3 id., 331; 4 id., 650; 5 id., 271; 4 Dana's R., 500; 4 Bibb R., 329; 2 Term. R., 59; 1 id., 74.

ROBERTS, J. The charge of the court was as follows:

"The jury must determine from the law and the evidence whether the land in controversy was vacant and subject to location by the plaintiff, or whether the same is embraced in the several surveys and patents under which the defendants claim.

"In coming to this conclusion they must be governed by the following rules:

"1. The initial point of the Caples survey must be presumed to be at or near the corner now known and recognized as the true southwest corner of the Del Valle survey, and not at any other supposed corner of said last named survey.

"2. Beginning the Caples survey at said corner, the lines must be run according to courses and distances without reference to any other supposed corner, about which there was some evidence."

If the survey was made to commence at the "initial point," referred to in the charge, the Caples tract would be based upon and lie (south) west of the (south) west boundary line of the Del Valle grant.

The "other supposed corner about which there was some evidence," referred to in the charge, was the fourth corner called for in the Caples survey, being "a stake on Onion Creek," with an elm and black oak marked as bearing trees, and the line from that corner south was proved to be marked about fifty varas, which was as far as the timber reached; and a branch on that southern line was found to be within five varas of the distance from said corner, as called for in the Caples survey. If this corner on Onion Creek should be allowed to control the locality of the survey, it would not be based on the (south) west boundary line of the Del Valle grant, as called for in the Caples survey, but would cover a portion of that grant and have for its beginning.

corner a point over a mile north of east of the south west corner of the Del Valle grant.

This (south) west boundary of the Del Valle grant was found, but if the survey was run out regarding it as the fourth line as called for, the fourth corner would not be on Onion Creek with said bearing trees, and a marked line running to it, &c.; but it would be three or four hundred varas from Onion Creek. The said (south) western boundary line of the Del Valle grant neither reaches to or crosses Onion Creek, so that there could be no such corner on that line as it is described in the Caples survey. The plaintiff, in order to show that this fourth corner as called for in the Caples survey should prevail over the fourth line as called for in fixing the locality of the Caples tract, offered in evidence the surveys of Bain, Lewis and Little, and a certified sketch from the old map of Bastrop and Travis counties, connecting these surveys with the Caples survey at its beginning corner; and he offered to prove by Harvey, who made all those surveys, that he began the Caples survey at a point which would make the Lewis and Little surveys connect with and adjoin to the Caples survey.

Upon objection all of this evidence was excluded from the jury upon the ground contained in the charge, which in substance was that the locality of the Caples tract must be fixed so as to make its fourth line run upon and with the now known and recognized western boundary line of the Del Valle grant, and that neither the parol or written testimony offered could be admitted to show the said fourth line to be at any other place.

Now, if it was permissible for the jury to give a preference to the fourth corner called for in the Caples survey, in fixing the locality of the tract, rather than the fourth line, and the written and parol evidence offered by plaintiff tended to aid in giving that preference, then the court erred both in the charge and in the ruling upon the admissibility of the evidence. Chief Justice Marshall lays it down as "an obvious principle that the grant must describe the land to be conveyed, and that the subject granted must be identified by the description given of it in the instrument itself." (3 Peters' U. S. R., 92; Chenoweth v. Haskell.) The two prominent objects specified in the survey here by which the

particular tract of land was sought to be identified, which was
intended to be granted, were this fourth corner at a natural object,
to wit, Onion Creek, aided by the artificial objects, to wit, the
marked bearing trees and marked line leading to it, and also the
fourth line, which was an artificial object, being the marked line
of an old survey of the Del Valle grant. Both of these objects
cannot be found on the ground connected in one survey. Each
one of them can be found in its appropriate position in a survey
in different localities. And each object would be sufficient to
identify and locate the land granted, if standing alone in the grant.
The land granted, then, cannot be identified by both objects. One
of the objects was described through mistake of the Surveyor.
The court, in effect, required the jury to find that the Surveyor
was mistaken about the creek, and would not allow it to be shown
by either written or parol testimony, that the mistake was about
the line of the old grant.

It is not perceived why a Surveyor would not be as likely to be
mistaken about an old line as about a creek. There are several
common modes in which such mistakes occur:

First: When the Surveyor finds on the ground a creek or a
line, and calls it by a wrong name. The coincident and connected
facts in relation to the corner at Onion Creek, raise a stronger
presumption that the Surveyor was present at and saw Onion
Creek, than that he was present at and saw the old line. And if
he had made a mistake as to the name of the creek which he did
see, he left behind him the evidences, such as bearing trees,
marked line, and distance to a branch, which would detect his
error in the name of the creek. But as to the old line he has left
no such evidences.

Second: Where the Surveyor does not really find and see the
creek or line called for, but supposes he is at such a line or creek,
though he cannot find it. This sort of a mistake would be more
likely to happen as to an old line than as to a creek.

Third: Where the Surveyor does not go to or see, or try to
find the creek or line, but supposes from his knowledge or infor-
mation of the country, that a particular course and distance called
for will reach the creek or the lines. It is obvious that this sort

of mistake was not made in this case as to the call for Onion Creek, as is shown by the marks and lines made there. As to the old line it might more likely occur, because the corner called for is four hundred varas from that line, and there is a clear mistake obvious upon the face of the grant, in calling for the course " *south*" of the southwest corner of the Del Valle grant, when it should have been for *southeast*. Another thing rendering it probable that he called for that old line upon supposition, without seeing it, is that there is no such place on that old line as that described on it in making the fourth corner, which purports to be on it.

The two objects, then, considered abstractly, furnish as great if not greater probability that the Surveyor made a mistake in calling for the old line than in calling for the marked corner on Onion Creek. Had the Surveyor been permitted to explain, in connection with the written evidence offered, how he made the mistake in calling for the old line, it might have been rendered perfectly certain to the minds of the jury that the fourth corner should control the locality of the land, rather than the old line of the Del Valle grant. Had there been but one object called for, and that the old line, then such testimony might not have been permissible, because the land granted must be identified by the object specified in the grant itself. In that case the old line being found, the description of the grant is satisfied, and that object must control, as there is no other object described in the grant which can stand in opposition to it. "The grounds of all proof respecting the calls of an entry must be laid in the entry." (Reid's Lessee v. Dodson, 1 Ten. R., 412.) That is, when several objects of identity are named in the grant and an effort is made to identify the land by following the calls, and some one of the objects vary from the description of it in the grant, proof of that discrepancy must first be made before other evidence in explanation of it can be admitted. Thus in following the calls of the Caples survey, starting so as to make this old line its fourth line, the fourth corner, which is well defined and described in the survey, cannot be found. So starting so as to make the fourth corner on Onion Creek as described in the survey, the old line of

the Del Valle grant is not found as the fourth line. Thus the ground of proof is laid in the calls of the survey itself, in applying it to the ground so as to identify the particular tract granted; and a question of fact is fairly raised for the jury to decide, in the light of all the surrounding circumstances adduced in proof, which one of the objects expressed in the grant most truly indicate to their minds the locality of the tract of land described in the grant.

There is no law fixing the effect of any call found in a grant, or giving one more weight or importance than another. Therefore, by merely looking at the face of the grant, which has several calls, the controlling call cannot be determined. Courts that have had to determine between conflicting calls, upon motions for new trials and otherwise, have laid down rules for their decision, founded on reason, experience and observation, which are rules pertaining, not to the admissibility, but to the weight of evidence. They have generally agreed upon a classification of and gradation of calls in a grant, survey or entry of land, by which their relative importance and weight are to be determined. The first class of calls are natural objects, such as rivers, creeks, mountains, &c.; the second are artificial objects, such as marks on trees, and marked lines, &c.; and the third are course and distance. Thus, in the abstract, or other things being equal, a river prevails over a marked line, and a marked line over course and distance. Still, the lowest grade, to wit, course or distance, is made to prevail over the highest grade, to wit, rivers, creeks, &c., when, upon applying the calls of the grant to the land, the surrounding and connected circumstances adduced in proof to explain the discrepancy, show that course or distance is the most certain and reliable evidence of the true locality of the grant.

In this case, the call for the fourth corner was of the highest grade, a natural object, a creek, and the point on the creek well defined by artificial objects, such as marked bearing trees, and a marked line to it, and still strengthened by its ascertained distance from another natural object, a branch on the third line. Whereas, the call for the line of the Del Valle grant was of the second class, an artificial object, without any marks on it by the surveyor,

Harvey, or any other evidence left on the ground that he was at it or saw it, and without any evidence that this old line was known to this or any other surveyor, or to other persons in the country, or that it was in any way notorious as a line of the Del Valle grant at the time Caple's survey was made. The court, therefore, erred in the charge and in excluding evidence explaining how the mistake was made in calling for the old line. (Bradford v. Pitts, 2 Con. Rep. S. C., 116; Weakley's Lessee v. Wilson et al., 1 Tenn. R., 377; Reid v. Dodson, Id., 412; Colclough v. Richardson, 1 McCord, 167; Thornberry v. Churchill and wife, 4 Monroe, 29; Preston's heirs v. Bowmer, 2 Bibb, 493; Bryan v. Beckley, Litt. Sel. Cas. 5 vol., 91; Shipp v. Miller's heirs, 2 Wheat, 315; Evan's v. Weeks, 6 Richardson, S. C., 90; Ralston v. McClurg, 9 Dana, 338.)

It is proper here to remark, as to the sketches of the map, that, as they are inserted in the transcript, they do not appear to be certified to by the Commissioner of the General Land Office; and as they were not objected to on that account, there may be some objection to them which we are not now called upon to decide.

In the case of Anderson v. Stamps, 19th Tex. R., 460, there are some remarks in the opinion which seem to stand in the way of this decision of this case. It is believed that there is a marked difference in the two cases.

First, the evidence offered and rejected in that case was not of a character that it could have changed the verdict of the jury.

Second, the party offering the parol testimony sought thereby, in the first instance, to raise a discrepancy which is not found in running the lines of the survey as called for in the grant, and by that means to change the locality of the land granted. (See also Hubert v. Bartlett, 9 Tex., 97; Bolton v. Lann, 16 Tex., 96; Urquhart v. Burleson, 6 Tex., 502.)

It seems to be conceded that the old work of Sims, the surveys of Irvin, Eggleston and others, lay on Onion Creek, and that their locality is well defined on the ground and well known, and are connected together. If the jury should locate the survey of Caples on the old line of the Del Valle grant, as contended for by the defendants, then the land filed on by plaintiff is not vacant. If,

however, part of the work of the Surveyor Harvey, to-wit, the surveys of Bain, Lewis, Little, Caples, Carbin and Hinton, were. connected as contended for by the plaintiff, it is a fact which can be proved to a moral certainty by running out the surveys. For they all call for some fixed objects such as creeks and branches,. giving their distances, or for marked trees. Such is the infinite variety in the face of nature, that if these objects be now found in so large a tract of country as they cover, with courses and dis- tances as they are described in the surveys, there can be no reasonable doubt about that being the land described in their grants. And if the jury should so believe and find, then it will be established that the block of work made by Sims, (surveys of Irvin, Eggleston and others,) and the block of work of Harvey that can thus be defined, (to-wit, the surveys of Bain, Lewis, Little, Caples, Carbin and Hinton,) leaves a vacancy between them larger, perhaps twice as large, as the surveys of Porter and Eaves that lay between the two blocks. In that event the jury would have to determine the locality of these two surveys. Both of these surveys call for quantity, course and distance, and also to adjoin both blocks, that of Sims and that of Harvey, supposed to be well defined. Neither the Porter nor the Eaves survey calls for marked trees or branches. Their beginning corners are even dubious without the aid of a map to show the relation between the two blocks. They could have been made in the Surveyor's office as well as on the ground. They were evidently made in the ex- pectation that they would fill up the space between the two blocks, and therefore the intention was to adjoin to one block as well as to the other. Three questions are therefore presented to the jury in fixing their true locality according to the calls in the survey.

1st. Shall the distance be increased so as to make them include all the land between the two blocks, for both of which they call?

2d. Shall the distance be preserved and they be held to adjoin the surveys of Hinton and Carbin in the Harvey block, for which they call?

3d. Shall the distance be preserved and they be held to adjoin the Sims' block of surveys, for which they call?

If the lines had been plainly marked, the distance or quantity

of land might not have prevented these surveys from including the quantity of land in the whole space. And so, also, if the objects called for on each side had been mountains, rivers, or other natural objects that must have been well known, and about which a mistake could not reasonably have been made. If, however, the objects on the two sides were called for upon mere supposition that they were just far enough apart to include the surveys according to the distance called for, then the objects at the sides would be supposititious calls, and the distance and quantity might control. In that event they would be carried to the one side or the other, that is, to Sims' block or Harvey's block, according to the relative prominence, certainty, or notoriety of the calls, as the jury might determine. For guides as to the rules of evidence on this subject, the authorities heretofore cited may be referred to profitably.

It is sufficient for the present that it does not follow as matter of law, that the Eaves and Porter surveys include all the land between the two blocks of Sims and Harvey, simply because they call for lines in each of them.

We find no brief in support of the exceptions of Black. The court decided that his lifting his certificates caused him to lose the benefit of his original files, although he substituted others in their places. It is not now perceived that there was any error in this decision.

Judgment reversed and cause remanded.

WHEELER, Ch. J., dissenting.