## JOHN WEBB v. JIM BROWN.

### (November 15, 1880.)

DEEDS, CONFLICTING CALLS.— It is settled, as a general rule in the construction of deeds, that, in case of a discrepancy in the description of the premises between the distances and the boundaries, the former are to be controlled by the latter, on the ground that the lesser must yield to the greater certainty.

Still, the course or distance is made to prevail over boundaries when, upon applying the calls of the grant to the land, the surrounding and connected circumstances adduced in proof to explain the discrepancy show that course or distance is the most certain and reliable evidence of the true locality of the grant.

The court will not presume that a surveyor did not actually run the lines of a survey in the absence of testimony.

It may be generally stated that where the number of acres is referred to as an " estimated " quantity, or coupled with the clause " more or less," or is clearly a matter of description, it is not a covenant.

DAMAGES; MEASURE OF, FOR BREACH OF WARRANTY.—The general rule applicable to the measure of damages, where the eviction is only partial, as in this case, is that the grantee can recover only in the proportion which the value of the premises from which he has been thus evicted bears to the whole premises, and the interest thereon and costs and expenses, subject to the same qualifications and conditions applicable in cases of total eviction.

APPEAL from Kaufman county. Opinion by WALKER, P. J.

STATEMENT. — The appellant assigned, among other grounds of error, the following, viz.:

4. That the court erred in permitting plaintiff to recover on breach of warranty to title of the R. A. Terrell survey, when the proof showed that title to said Terrell survey had not failed.

5. That the court erred in giving judgment for plaintiff for damages growing out of breach of warranty of title, when all the proof only tended to show a shortage in the quantity of acreage; that the title to said survey was admitted and proved to be good.

These two assignments may be considered together. As applied to the facts of this case, they involve the proposition whether, when the description given in a deed by metes and bounds, under a survey which has been made of the land, and the line of the survey of a different tract of land is called for, and the line as purporting to have been run according to distance shall pass over said line of such other survey, and thereby embrace within said metes and bounds a part of said adjoining tract of land, whether the line or boundary of the latter tract thus called for shall necessarily and conclusively control the calls of the lines for course and distance; whether, in other words, by the terms of the deed and its legal effect, containing such a description of the land conveyed, the boundaries are restricted to the line of such adjoining survey. If they are not, the further proposition contained in the fifth assignment of errors need not be considered, because there would not be, in fact, any "shortage" in the number of acres intended to be conveyed, and the question involved would be that which arises on a failure of title as to part of the land conveyed.

OPINION. — It is settled, as a general rule in the construction of deeds, that, in case of a discrepancy in the de-

scription of the premises between the distances and the boundaries, the former are to be controlled by the latter, on the ground that the lesser must yield to the greater certainty. The rules by which courts are governed in determining from the description of the land given by the calls in a deed are but those of reason, founded on experience and observation, applied to the subject for the purpose of identifying and rendering certain the true locality of the land as the same has been actually located or surveyed.

Justice Roberts, in Booth v. Upshur, 26 Tex., 70, thus stated the principle with its mode of proper application: "There is no law fixing the effect of any call found in a grant or giving one any more weight or importance than another. Therefore, by merely looking at the face of the grant, which has several calls, the *controlling* call cannot be determined. Courts that have had to determine between conflicting calls, upon motions for new trials and otherwise, have laid down rules for their decision, founded on reason, experience and observation, which are rules pertaining, not to the admissibility, but to the weight of evidence. They have generally agreed upon a classification of and gradation of calls in a grant, survey or entry of land, by which their relative importance and weight are to be determined. The first class of calls are natural objects, such as rivers, creeks, mountains, etc. The second are artificial objects, such as marks on trees, and marked lines, etc.; and the third are course and distance. Thus, in the abstract, or other things being equal, a river prevails over a marked line, and a marked line over course and distance. Still, the lowest grade, to wit, course or distance, is made to prevail over the highest grade, to wit, rivers, creeks, etc., when, upon applying the calls of the grant to the land, the surrounding and connected circumstances adduced in proof to explain the discrepancy show that course or distance is the most certain and reliable evidence of the true locality of the grant."

The practical application of the foregoing rules has

been illustrated in the decisions of our supreme court under very many varying, important and interesting phases in cases too numerous to require citation. See Urquhart v. Burleson, 6 Tex., 511; Bass v. Mitchell, 22 Tex., 294; Mitchell v. Burdett, id., 535; Booth v. Strippleman, 26 Tex., 442; Bolton v. Lann, 16 Tex., 111; McCown v. Hill, 26 Tex., 361; Castleman v. Ponton, 51 Tex., 84.

It is contended by the appellant under the fourth assignment that the title conveyed to the plaintiff had not failed, notwithstanding the admitted fact that the deed recited the contents of the tract to be one hundred and sixty acres, and that it contained but ninety acres, because, as he urges, that the field-notes recited in the deed call for the boundary line of the Bennett survey, and that the tract, being thus limited by that call, and embracing thereby only ninety acres, that the other calls by course and distance, which, if they should prevail, would include a part of the land embraced in the Bennett survey (admitted to be an older and a valid title), must be disregarded, and that in consequence there was no failure in the title conveyed by the deed. The plaintiff's cause of action, being based upon the defendant's warranty of title, relies upon the existence of the actual survey, as described in the deed, to the points indicated according to the courses and distances set forth in the field-notes, and alleges eviction from the excess of land thus embraced in the one hundred and sixty acre survey, and surrender to the adverse paramount title.

A discrepancy as to the actual lines and boundaries of the survey as actually made by the surveyor exists not on the face of the deed, but under the facts admitted, which demonstrate that if the survey does include one hundred and sixty acres, that the call for the Bennett line is incorrect, and that the lines of the survey passed over it and included within them seventy acres of the Bennett tract.

Whether the survey was in fact thus made or not was a fact to be ascertained by the judge who tried the case. There was evidence before him strongly tending to estab-

lish the existence of the survey upon the ground in accordance with the courses and distances indicated in the field-notes. In determining a question of this kind, where a seeming repugnance exists in the calls like that which is presented here, no unfavorable presumption, in the absence of proof, will be indulged against the truthfulness and correctness of the calls; it will be presumed that the surveyor did actually make the survey as indicated in his field-notes. Stafford v. King, 30 Tex., 257. The court will not presume that a surveyor did not actually run the lines of a survey in the absence of testimony. Castleman v. Ponton, 51 Tex., 84. It was proper, therefore, in attempting to reconcile the discrepancy in the calls of the survey, to adopt the rule which would explain, if possible, a mistake, if any existed in them, and which would thereby establish with reasonable certainty where the survey in fact was made; to follow, indeed, the footsteps which the surveyor made upon the ground.

It is admitted that both of the surveys or tracts of land were in the prairie and unoccupied, and that neither of the parties knew anything of the boundaries of either tract.

No evidence on either side was adduced in anywise explanatory of the field-notes of the survey of the land conveyed to the plaintiff. The field-notes are as follows, to wit: Beginning at the north corner of A. J. Butts' survey, from which two post oaks six and ten inches in diameter bear north thirty-seven east twenty-five varas distant; thence south forty-five east four hundred and seventy-five varas to corner, from which a pecan twelve inches in diameter bears north forty-five west seventy varas distant, a walnut ten inches in diameter bears north, north thirty-three, east fifty-five varas distant; thence north forty-five east nine hundred and fifty varas, corner, from which a post oak bears north eighty-eight west one hundred and thirty varas distant; thence south forty-five east eight hundred and fifteen varas, corner; thence north forty-five east three hundred and fifty varas, corner on southwest line of

A. Bennett's survey; thence north forty-five west one thousand two hundred and ninety varas to a corner in the prairie; thence south forty-five west one thousand three hundred varas to the place of beginning.

The admission of the parties, taken in connection with the foregoing field-notes, " that it was proven on the trial that the land conveyed by the defendant to the plaintiff contained only ninety acres — that it was short seventy acres," established these facts, viz.: that the lines, if actually run by course and distance, ran across and into the Bennett survey and did not corner on it, including within them seventy acres of the Bennett; that the line from the fourth to the fifth corner, calling for the Bennett line by a line in the field-notes of three hundred and fifty varas, should have stopped at forty-four varas distant from the fourth corner, and if the fifth corner was really established on the Bennett line, the surveyor made a mistake in the call for distance of three hundred and six varas in respect to a line which ought only to have been forty-four varas in length. It also shows that if the actual survey made ran on and with the Bennett line from the fifth to the sixth corner, that he made a like mistake in distance in the call of one thousand three hundred varas from the sixth corner to the place of beginning, when instead thereof the distance would have been a few varas less than one thousand. The survey purports to contain one hundred and sixty acres of land; according to the lines run by the courses and distances called for, the area embraced within them includes that number of acres, otherwise there exists a deficiency of about seventy acres. The field-notes and the admitted facts show the lines and corners connecting these two surveys were in an unoccupied prairie, and the field-notes of that portion of the survey do not point to nor call for any natural boundary or visible landmark, natural or artificial; and there may have been none on the face of the ground whereby to identify or signalize the locality of the line of the Bennett survey, thus giving rise to the opportunity for

error and mistake on the part of the surveyor in his supposed ascertainment of the locality of the Bennett line, on which he proposed to establish the fifth corner of his survey. It is thus further established that the configuration of the survey, if the lines were not run by the distances as stated in the field-notes, but according to the line of the Bennett survey, would have given a strip of land, as a part of the tract, eight hundred and fifteen varas in length and in breadth only forty-four varas — a shape so awkward and impracticable as to amount to a circumstance to be weighed with the other evidence in favor of the integrity of the lines as to distance.

These circumstances, in evidence before the judge, were proper to be considered by him, and from which he well might have determined that the survey was actually made according to the courses and distances indicated in the deed, and that they should prevail over the call for the Bennett line.

The opinion of the court in Castleman *v.* Ponton, 51 Tex., 84, delivered by Justice Gould, upon the facts of a case sufficiently analogous to well illustrate the rule of law properly applicable to this, may be here appositely referred to. He remarks: "In view of the difficulty of believing that, in measuring in a line of eight hundred and eight varas, a surveyor could commit a mistake of about six hundred varas, so as to enlarge a survey intended to embrace but four hundred and twenty-one acres, to over seven hundred acres, and of the facility with which a marked line parallel to the east line of the Hope survey might be mistaken for that east line, we are of opinion that the additional evidence was sufficient to support the judgment, treating the calls for course and distance as, under the surrounding circumstances, the controlling calls."

Another case lately decided at Austin (1880) has, I learn, if possible, even more exact application here than the case above quoted from. I regret that the opinion in it is not readily accessible to us.

It results from these views taken of the question before us that the court did not err in determining that the defendant did purport to convey by deed the tract of land described by metes and bounds, according to the courses and distances given, and, if so, it is clear from the statement of facts that there was a breach of the covenant of warranty contained in the deed, to the extent of so much of the land as was embraced in the Bennett survey. Authority need not be cited to show that, in such state of case, an action lies upon the covenant of warranty of title; it being admitted that the Bennett survey was, at the date of the deed, and still is, the superior title, and belongs to Mrs. Grinnan, as is admitted in the plaintiff's petition, in whose favor he disclaims, and to whom he alleges he has surrendered the possession.

As already stated, we need not consider the fifth assignment of errors; under the view taken by us the question therein presented does not arise in the case. If the call in the deed for the Bennett line had proved to be one which controlled the other calls of the survey, then, indeed, the question presented under the fifth assignment would have been raised for decision; but under the view which we take of the case no question of that kind occurs; it becomes a pure question of whether there has been a failure of title to the land purported to be conveyed, as we have interpreted the law applicable to the facts. We have, nevertheless, examined, with no small degree of care, and with some research, the merits of the question involved in that assignment. Besides the covenant of warranty of title contained in the deed, and the calls and descriptive boundaries of the land conveyed, the field-notes in the deed are prefaced with the following introductory statement, viz.: " Situated in Kaufman county, on the waters of Kings Fork of Cedar creek, about eleven miles N. 29 E. from the town of Kaufman, being a survey of one hundred and sixty acres, beginning," etc. The field-notes conclude, after giving metes and bounds, thus: " including one hundred and

sixty acres." The number of acres contained in the tract, or to be conveyed, do not elsewhere, nor in any other connection than has been above stated, occur in the deed. The evidence showed that this tract of land was taken in part payment of a farm sold by plaintiff to defendant, and which satisfied $960 of the price agreed on for the farm, the tract of land here involved being "reckoned at $6 per acre."

The question presented under the assignment of error is whether the reference to quantity is a part of the description of what is intended to be granted, or intended as an assurance of the quantity mentioned, and if it be the latter, whether the plaintiff is protected under the general covenant in the deed of warranty of the title. According to the face of the deed, taken even in connection with the other facts attending the sale, the purchase of the land was in gross and not by the acre. See the facts of the case and the opinion in Daughtrey v. Knolle, 44 Tex., 457. Under all the authorities bearing upon the question, this conclusion is decisive, that no action on the general covenant of warranty will lie for deficiency in the quantity or number of acres. Daughtrey v. Knolle, *supra*.

The principle of law applicable to the extension of the benefits of such general covenant of warranty of title to the inclusion of a deficiency in the quantity of land is laid down to the same effect, in substance, though in different terms, both by Mr. Rawle in his treatise on Covenants for Title, p. 521, and by Mr. Washburn (in his treatise on Real Property), 3 Wash., p. 418, sec. 36, and to quote from the latter authority: "It may be stated, generally, that where the number of acres is referred to as an 'estimated' quantity, or coupled with the clause of 'more or less,' or is clearly a matter of description, it is not a covenant. So where the quantity is mentioned in addition to the boundaries in the description of the estate, the quantity yields to the boundaries if they do not coincide. If, on the other hand, the quantity be of the essence of the contract between the parties, the covenant is construed relatively to the quantity of

land conveyed, and is to be deemed an assurance to the purchaser of the existence of that quantity."

Among the numerous cases cited by Rawle, notes 1, 2 and 3, p. 521, and by Washburn (3d vol., notes 1, 2 and 3, p. 418, 3d ed.), the following may be selected as furnishing valuable illustrations of the application which courts have made to the subject, viz.: Snow v. Chapman, 1 Root, 528; Morris v. Owens, 3 Strobhart (S. C.), 199; Steiner v. Baughman, 2 Jones (Pa.), 106; Pecare v. Chouteau, 13 Missouri, 527; Hall v. Mayhew, 15 Md., 551; Wright v. Wright, 34 Ala., 194; Beal v. Burkhalter, 26 Ga., 564–567; Powell v. Clark, 5 Mass., 355; Mann v. Pierson, 2 Johns., 37; Perkins v. Webster, 2 N. H., 287.

Although we rest our opinion upon the right to sue for breach of covenant of warranty in this case upon the grounds which we discussed under the fourth assignment of errors, and not upon the question presented under the fifth, we have seen proper to make this rather extended comment upon the latter because it seems, from the briefs and arguments of both of the counsel, that the legal propositions involved under it have been treated by them, and possibly by the district court, as controlling and decisive of the result; besides, in view of the general importance of the subject, we have considered it appropriate to make such suggestions and references under this head as have resulted from our consideration of the discussion of counsel and the authorities examined by us.

The second assignment of errors is as follows: "The court erred in giving judgment for seventy acres shortage, and rating the same at over $7 per acre, when no witness claimed the land was worth over $6 per acre."

This assignment seems to be predicated upon the idea that the judgment of the court was based upon the deficiency in quantity of land, and the recovery had upon the warranty to cover the deficit. Whether the court took that view or not is not indicated in the record; the judgment is simply in favor of the plaintiff for $669.04, as the result of the law applied by him to the pleadings and the evi-

dence. The petition contained an alternative prayer for a rescission of the contract, and for damages on the covenant of warranty of title. The judgment plainly shows that the action of the court did not operate upon the contract, but had respect to the prayer for damages on the covenant.

The rule for the measurement of damages for deficiency in quantity, and that for partial failure of the title, is different. It is sufficient to say that it does not appear from the record that the court committed the error complained of in the second assignment, nor yet does it appear by what rule the court acted in reaching the result. We will, however, consider under the sixth assignment of error, complaining of the overruling of the motion for new trial, one of the grounds of which was that the assessment of damages was excessive, whether or not there was error in respect to the amount of damages given under any legal aspect of the case.

The evidence showed that this tract of land was conveyed to the plaintiff in part payment of the price of the farm heretofore mentioned, and accepted at the estimate price of $960, the land being reckoned as worth $6 per acre. It was proven on the trial that the part of the said survey which conflicted with the A. Bennett survey, as determined by course and distance, was twice as valuable by the acre as the rest of the said survey, that is, the remaining ninety acres. The plaintiff testified that his price for his farm was $6,000; that he held it at that; that defendant offered him $6,000 for it a few days before, but when they came to draw writings defendant stated that he was not able to pay him all in money, and thereupon the said two tracts of land were conveyed by defendant to plaintiff, reckoned and valued as aforesaid; that he traded for the R. A. Terrell survey at $6 per acre, and supposed it to be worth that amount.

The defendant testified that at the time of the trade the tract — the R. A. Terrell one hundred and sixty acre survey — was not worth exceeding $4 per acre.

The general rule applicable to the measure of damages,

where the eviction is only partial, as in this case, is, that the grantee can recover only in the proportion which the value of the premises from which he has been thus evicted bears to the whole premises, and the interest thereon, and costs and expenses, subject to the same qualifications and conditions applicable in cases of total eviction. Field on Damages, sec. 475, and authorities cited. This rule bears with entire equality on both parties; for whilst the grantee may show, if he can, a value to the premises from which he has been evicted relatively greater than the balance of the tract, it is competent for the grantor to show that the part in reference to which the title has failed was inferior to the remaining portion of the tract. Morris v. Phelps, 5 Johns., 49; Rawle on Cov. for Title, p. 113.

The consideration named in the deed was $900, which is at least *prima facie* evidence that it was the true one; but it is not conclusive, and the true consideration may be shown by parol evidence. Field on Damages, sec. 462, p. 386, and authorities cited. The consideration was shown to be $960 in property, the price of which was agreed upon, as has been already stated. In such case it seems that the recovery may be based upon the value fixed on the property by the parties at the time of the trade, and taken in payment for the land conveyed, rather than upon its actual value. This rule, Judge Field shows (sec. 462, id.), was applied in Iowa in an action on a covenant of warranty in a deed expressing a consideration of $150,000, but which consideration was personal property. Williamson v. Test, 24 Iowa, 138.

Now, applying these rules of law for the measurement of the plaintiff's damages to all the evidence which legitimately may be considered, it is ascertained by calculation, upon the basis that the seventy acres are twice as valuable per acre as the remainder of the tract which was conveyed, that the damages sustained by the plaintiff were $584.35. To this amount should be added legal interest from the time of eviction or of. surrender to the superior title, not

from the date of the conveyance; this action not being founded on a covenant of seizin, but of general warranty of title, interest can be recovered only under the rule above prescribed. There is no evidence of actual ouster, nor is there any other evidence of a surrender to the true owner than is exhibited by the disclaimer of title contained in the petition. Therefore, interest is allowable only from date of filing petition, viz., September 1, 1879, which, up to the 17th day of April, 1880, date of the judgment, amounts to $46.74, making in the aggregate $613.81. The difference between that sum and $669.04, the amount of the judgment as rendered, is $55.23, which is thus much in excess of the true amount of damages which the evidence establishes were sustained by the plaintiff.

The judgment of the district court must, therefore, be reversed for the error above indicated; but inasmuch as the amount of the damage is not uncertain, but is rendered certain under the agreed facts, which recites that "it was *proven* on the trial that the part of the said survey sold by defendant to plaintiff in conflict with the A. Bennett, as determined by course and distance, was *twice* as valuable by the acre as the rest of the said survey, that is, the remaining ninety acres," and as there is no other evidence in the case which can properly qualify the force of this evidence, it is our opinion that the supreme court should proceed to render such judgment in the premises as the district court should have rendered, which we determine shall be a judgment for the plaintiff against the defendant for the sum of $619.81, with legal interest thereon from the date of the judgment in the district court, viz., the 17th day of April, 1880, with all costs of suit, and that the appellee be adjudged to pay the costs of this appeal.

In accordance with this opinion will be our award.