MARSHALL WELLS v. GEO. W. LITTLEFIELD.

(Case No. 4703.)

1. SALE.— Though, as a general rule, a contract for the sale of chattels remains ex-
   ecutory so long as anything remains to be done to the thing sold to distinguish it
   from other things of like character. yet when the act to be performed is to be done
   by the purchaser, to whom possession is delivered before its performance, the con-
   tract is executed, and the sale complete on delivery.
2. BILL OF SALE OF CATTLE.— Though, under the statute, the possession of cattle
   purchased and delivered without a bill of sale thereof is *prima facie* illegal, still
   the title to the property passes on purchase and delivery without a bill of sale.
   when the purchase is *bona fide*, upon sufficient consideration, and no evasion of
   the law is intended.
3. NOTICE.— One who purchases cattle which are at the time not in the possession of
   the vendor, but of another who, though having no bill of sale thereof, has pur-
   chased and received possession in good faith, cannot be an innocent purchaser, but
   is affected with notice of everything in regard to the claim of the first purchaser,.
   which· a reasonable inquiry would have enabled him to obtain.

4. CONTRACT.— A debtor who places chattels in the possession of his creditor, with an agreement that the creditor shall have an interest in them commensurate with the amount of his debt, and that the creditor should set aside a sufficient amount to satisfy his debt and return the residue to the debtor, invests the creditor with a power over the property which cannot be revoked, and a subsequent sale of the entire property to another, while it remains in the hands of the creditor, passes no title as against the creditor's right to payment.

APPEAL from Lampasas.   Tried below before the Hon. W. A. Blackburn.

Suit by the appellee, Geo. W. Littlefield, against Marshall Wells for the recovery of one thousand and eighteen head of cattle, of which plaintiff claimed to be the owner, and which were alleged to have been taken possession of and unlawfully withheld by defendant.   Plaintiff obtained a writ of sequestration.   The petition alleged the average value of the cattle to be $9.80 per head, and the aggregate value to be $10,000.

Defendant Wells filed his answer, in which he pleaded:

1st. General denial.

2d. That on August —, 1881, L. A. Mosty and R. E. McAnulty were doing business as partners in buying and selling cattle, and were such partners until about November 1, 1881.   That during the partnership, in payment for cattle, Mosty executed to Wells his promissory note for $4,300, dated August 20, 1881, payable thirty days after date and drawing ten per cent. per annum interest. That said cattle were bought and used by said partnership, and that by agreement between Mosty and McAnulty the debt due defendant was to be considered as a partnership debt; that the business of said partnership was done in the name of L. A. Mosty; that the note had never been paid except as elsewhere stated in answer; that afterwards Mosty authorized and instructed defendant to go to Denton county, Texas, and get and drive one thousand and eighteen head of cattle to Lampasas county, and hold the same until he, the defendant Wells, could select therefrom a sufficient number at the price Mosty had paid for same, to pay off the note and interest. That the price paid by Mosty for the one thousand and eighteen head of cattle was $8 per head.   That relying on the promise of Mosty, he, Wells, went to Denton county, and at great expense drove the cattle to Lampasas, which were the same described in plaintiff's petition, and was holding the same and waiting for the arrival of Mosty and McAnulty to make his selection therefrom and deliver the balance to Mosty and McAnulty, when the cattle were seized and taken from the possession of defendant by the

sheriff of Lampasas county, by virtue of the writ of sequestration. That if plaintiff ever acquired any right to the cattle, the same was acquired from Mosty and McAnulty after defendant had taken possession of the same under his agreement.

Defendant also by his answer asked that Mosty and McAnulty be made parties to the suit; that said cattle be ordered returned to defendant to enable him to select a sufficient number at $8 per head to pay off his debt, or that the cattle be decreed to be sold for the satisfaction of the debt; or in the event it should be found that the cattle have gone into the possession of plaintiff, and been removed beyond the jurisdiction of the court, then that defendant have judgment against said plaintiff and the sureties on his replevin bond for the amount of principal and interest due on the note.

Plaintiff filed exceptions and general denial to defendant's answer. The case was tried by the court without a jury, and judgment rendered in favor of plaintiff, that he have and retain from defendant the possession of the cattle; that plaintiff be quieted in his possession, etc.; the judgment reciting that the cattle were taken from the possession of defendant by the sheriff of Lampasas county by virtue of a writ of sequestration issued in this cause; that defendant failed to replevy the cattle, and they were delivered by said sheriff to plaintiff, he giving his replevin bond therefor.

The following were the conclusions of law and facts filed by the court at the request of defendant's counsel:

"1st. I find the following to be the facts: That sometime in September, or about the 1st of October, 1881, L. A. Mosty was indebted to Marshall Wells in the sum of $4,300, and agreed with Wells that if he (Wells) would go from Lampasas to Denton county and get five hundred head of cows, with calves, that he had bought there from Knight & Dawson, and bring them to Lampasas county, he could select therefrom a sufficient number, at $16 for each cow and calf, to pay off said debt. That Wells agreed to do so, and afterwards, on the 8th of October, met Mosty in Fort Worth, and he then received an order on Knight & Dawson for the cattle, signed by Mosty and McAnulty, and went to Denton county and got the cattle, and reached Lampasas county with them on the 13th of November, 1881, and they were seized by the sheriff of Lampasas county by virtue of the writ of sequestration issued in this cause. At the time they were seized they were in the possession of Wells, but he had not selected therefrom any number in payment of his said debt, and he had no bill of sale thereof, but held them only by virtue of said agreement and order.

"I find that on the same day that the order was given, L. A. Mosty conveyed by bill of sale all his cattle under herd and on the range to R. E. McAnulty, and received from McAnulty an instrument bearing same date, the two instruments constituting a mortgage. The bill of sale was recorded, but the other instrument was not recorded. On November 2, 1881, at Kansas City, Missouri, R. E. McAnulty conveyed by bill of sale all his cattle in Lampasas county and adjoining counties to G. W. Littlefield.

"I further find that after Wells took possession of the cattle in Denton county he claimed to be part owner of the herd.

"2d. I conclude that from the above facts that Wells did not acquire any title to or lien on or right of possession to said cattle as against the plaintiff G. W. Littlefield, who has acquired Mosty's title thereto, he not having received a bill of sale or other convey-ance thereof, and not having selected and designated any number of cattle in payment of his debt."

*A. G. Walker* and *Matthews & Wilkes*, for appellant, cited Benjamin on Sales, pp. 243, 253–255; Story on Sales, secs. 296*b*, 296*c* (pp. 314, 315), and notes; Story on Ag., secs. 466, 477; 2 Kent's Com., pp. 634, 643; Watts *v.* Hending, 13 Fla., 523; Russell *v.* Carrington, 42 N. Y., 118 (1 Am. Rep., 498); Adams *v.* O'Connor, 100 Mass., 515 (1 Am. Rep., 137); Graff *v.* Fitch, 11 Am. Rep., 85, and note 90; Mathias *v.* Sellers, 86 Pa. St., 486 (27 Am. Rep., 723); Ferguson *v.* Northern Bank of Kentucky, 14 Bush, 555 (27 Am. Rep., 418).

*Walter Acker* and *Fisher & Fisher*, for appellee, cited on the proposition that appellant's contract was executory and conferred no right, Cleveland *v.* Williams, 29 Tex., 205; Woods *v.* Half, 44 Tex., 633; Dixon *v.* Meyers, 7 Gratt., 240; Word *v.* Shaw, 7 Wend., 404; Crowfoot *v.* Bennett, 2 Comst., 260; McDonald *v.* Hewett, 15 Johns., 349; Barrett *v.* Goddard, 3 Mason, 112; Rapelye *v.* Mackie, 6 Cow., 250; Russell *v.* Nicoll, 3 Wend., 112; Outwater *v.* Dodge, 7 Cow., 85; Stevens *v.* End, 10 Barb., 95; Damon *v.* Osborn, 1 Pick., 476; Macomber *v.* Parker, 13 Peck, 175; Handlette *v.* Tollman, 14 Me., 400; Cushman *v.* Holyoke, 34 Me., 289; Stone *v.* Peacock, 35 Me., 385; Golder *v.* Ogden, 15 Penn., 528; Lester *v.* McDowell, 18 Penn., 91; Reddle *v.* Vorman, 20 Pick., 280; Davis *v.* Hill, 3 N. H., 382; Messer *v.* Woodman, 2 Foster, 172; Warren *v.* Buckminster, 4 Foster, 337; Crawford *v.* Smith, 7 Dana, 61.

WILLIE, CHIEF JUSTICE.— It is a general principle of the law regulating sales of personal property, that when anything remains to be done to the thing sold to identify it or discriminate it from other things, the sale is not complete. 1 Pars. on Con., 527; Blackburn on Sales, 152; Benjamin on Sales, §§ 311a, 319.

This rule admits of many qualifications, and if the clear intention of the parties is that the property shall pass notwithstanding something remains to be done to it before it is definitely ascertained, the sale will be considered executed. Benj. on Sales, § 311.

It seems, also, that where possession is given to the buyer, and the act necessary for the designation of the articles sold is to be performed by him and not by the seller, title would pass absolutely to the purchaser. 1 Pars. on Con., 527; Farling v. Boxton, 6 Barn. & Cress., 360; Russell v. Carrington, 42 N. Y., 124; Blackburn on Sales, 152; Benjamin on Sales, § 358; Page v. Carpenter, 10 N. H., 77.

In the last cited case a quantity of goods were constructively delivered to the buyer, with the understanding that, if they were not more than he had bargained for, he might keep them all; if they were more, the seller was to have the balance. A creditor of the vendor attached the remainder of the goods after a small portion of those purchased had been set apart by the buyer. The court held that the contract was executed, and not executory, and that portion of the goods which had been included in the bargain was not liable to attachment for the debts of the seller.

The reason of the general rule seems to be that it is for the benefit of the vendor that the property should pass; because the risk of loss is thereby transferred to the purchaser, whilst the vendor retains possession to secure payment of the price. Where the agreement, therefore, is that he is to do something, before he can compel the purchaser to accept the goods, the intention of the parties should be taken to be that the vendee was to do this before he obtained the benefit of the transfer of the property. Blackburn on Sales, 152. Says the above writer in continuation: "The presumption would be unreasonable when the acts were to be done by the buyer, who would thus be rewarded for his own default." Id., 153.

It is the intention of the parties that the law endeavors to arrive at, and when that is ascertained it will generally determine the nature of the contract.

We find in this case that the cattle had been actually delivered into the possession of the purchaser. The purchase money was virtually paid, as the debt for which the cattle were to be taken was

in effect extinguished by his agreement to take a portion of them in payment of it, and receiving them into his possession under that agreement. He had partly performed his part of the contract by driving the cattle from Denton county to the place where the selection of his portion of them was to be made. Nothing was left for the seller to perform in order to complete the sale; and it would be unjust to make him liable for loss that might accrue to the property thus placed in charge of the buyer, because of any delay or neglect on the part of the latter to make the appropriation of his share of it, as he was bound to do by the agreement. It would be permitting the purchaser to take advantage of his own wrong, if, upon a destruction of the property in his possession, he could say, I have not done what I was bound to do under my contract, and hence the seller, who has done all that he agreed to do, must suffer the consequences.

This case is a stronger one than that cited from New Hampshire. There the goods were not actually but only constructively delivered into the keeping of the purchaser. Here they were in his manual possession, and the seller had no possible opportunity of exercising control over them and should not be charged with responsibility for their safety. If not thus chargeable he cannot be entitled to any benefit from them. It cannot be allowed that one should reap all the benefits of such a condition of things and not be subject to its disadvantages. We think that in this case Wells was liable for all losses or damages that might occur to the cattle in his possession, to the extent of his interest in them, and hence was entitled to all the advantages to be derived from their ownership.

Some stress is laid upon the fact that no bill of sale accompanied the delivery of the cattle to the appellant, as required by art. 4562, R. S. The penalty for not taking such a written instrument upon receiving possession of cattle is that the possession shall be deemed *prima facie* illegal. Id., art. 4563. It is not made conclusively unlawful, but is open to explanation; and nothing prevents a title to such property from passing without a bill of sale if it can be proved that it was *bona fide* made, upon sufficient consideration, and that no evasion of the law was intended.

In this case such proof was clearly made, and Wells was shown to be in the possession of the cattle under a just and legal title, holding under a delivery to him by the agents of their former owner by virtue of a written order to them from such owner, and that he had paid a full consideration for them.

Wells being thus in possession of the cattle at the time they were

sold to Littlefield, the latter was affected with notice of his rights
and of everything in regard to Wells' claim to a knowledge of which
an inquiry would have led him.   Such inquiry would have informed
him of all the facts and circumstances which we have detailed as.
showing title in Wells, and appellee can therefore set up no claim as
an innocent purchaser of the property.

But there is another view of the transaction between Mosty &
Wells equally decisive of this case in favor of the appellant.   Ad-
mitting that there was no complete sale effected by reason of the
facts proven on the trial, the agreement between Mosty & Wells
constituted appellant at least an agent of the former to receive the
cattle from Knight & Dawson, bring them to Lampasas county, and
then take out his own share of them, and deliver the balance to·
Mosty.   So soon as that contract was completed, and the cattle de-
livered under it to Wells, and thereby his debt against Mosty became·
extinguished, if not the part owner, he became at least the agent of
·Mosty to do the things his contract bound him to perform.   He be-
came interested in the subject matter of his agency; he was invested
with a right in the thing about which it was to be exercised; the
contract resulted in conferring upon Wells a power coupled with an
interest which the subsequent sale by his principal did not revoke..
Hunt v. Rousmanier, 8 Wheat., 174; Walker v. Dennison, 86 Ill.,
142.

Chief Justice Wilde, in Smart v. Saunders, 5 C. B., 895, thus
states the nature and effect of such a transaction:   "When an·
agreement is entered into on a sufficient consideration, whereby an
authority is given for the purpose of securing some benefit to the
donee of the authority, such an authority is irrevocable.   This is.
what is usually meant by an authority coupled with an interest."

Had the very terms of this transaction been expressed in the form
of a power of attorney, it would have constituted just such a one as.
we have described.   Mosty would have acknowledged his indebted-
ness to Wells; his placing the cattle in his possession with the under-
standing that he was to have an interest in them commensurate with
the amount of such debt; that he was to set aside enough of the·
cattle at $16 per head to satisfy that interest, and deliver the balance
to Mosty.

Had the power of attorney, after conveying the interest, directed·
Wells to sell the entire herd, and retain $4,300 for himself, and pay
the balance to Mosty, or to some other person for him, the usual
examples of a power coupled with an interest would have been com-
plete.   But no difference between the principle upon which the·

latter power is construed to be coupled with an interest, and that of the former, can be perceived, and the right of Mosty to revoke in the one case was as completely destroyed as in the other. The attempted revocation by the subsequent sales of the cattle did not affect the rights of Wells, and no title passed which could deprive him of the benefit of his previous contract.

These views lead to the conclusion that the judgment below must be reversed. As the case was tried before the district judge without the intervention of a jury, this court would render such judgment as should have been rendered by the district court, were the record presented to us in such condition that we could fully dispose of the rights of the parties. The judgment below will be reversed and the cause remanded, with directions to the court below to enter up such judgment in favor of the appellant, Marshall Wells, as under the law as announced by this opinion he was entitled to obtain upon the former trial of the cause, from the result of which this appeal was taken; and to allow him such recovery as he had a right to in the state of the record below, had the decision there been in his favor upon the trial of the right to the property in controversy.

REVERSED AND REMANDED.

[Opinion approved June 5, 1883.]