## BAKER v. HENEY.

(Court of Civil Appeals of Texas. San Antonio. March 18, 1914. Supplemental Opinion, April 1, 1914.)

1. BOUNDARIES (§ 3*)—DESCRIPTION — RELATIVE IMPORTANCE OF CONFLICTING EVIDENCE.
    Where a description of a survey called for well-established surrounding surveys on all sides, such calls controlled the courses and distances, and the mere fact that by running courses and distances there was an excess was immaterial.
    [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

2. BOUNDARIES (§ 3*)—DESCRIPTION — RELATIVE IMPORTANCE OF CONFLICTING ELEMENTS.
    In locating land, recourse will be had: First, to natural objects; second, to artificial objects; and, third, to courses and distances.
    [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

3. BOUNDARIES (§ 6*)—LOCATION OF SURVEY—REVERSING CALLS.
    In determining the boundary of a survey, the calls may be reversed only when the survey was actually made.
    [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 47–57; Dec. Dig. § 6.*]

4. PRINCIPAL AND AGENT (§ 34*)—TERMINATION—REVOCATION BY PRINCIPAL—AGENCY COUPLED WITH INTEREST.
    A power of attorney, which merely empowered the agent to sell land and turn over the proceeds, the agent having no interest in the land, was not a power coupled with an interest, and hence was revocable.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 55; Dec. Dig. § 34.*]

5. VENDOR AND PURCHASER (§ 342*)—LIABILITY OF COTENANT—SALE AND CONVEYANCES.
    Where a tenant in common contracts to convey a designated portion of an undivided tract of land, and is unable to do so by reason of such portion falling to another in partition, the remedy of the purchaser is a suit for damages.
    [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1018, 1019; Dec. Dig. § 342.*]

6. COMPROMISE AND SETTLEMENT (§ 6*)—CONSTRUCTION OF AGREEMENT.
    Where plaintiff and defendant, two claimants for a tract of land, entered into a compromise agreement, whereby they agreed to sell the disputed tract and divide the proceeds, plaintiff could recover under the agreement, though it was afterwards determined that the tract belonged to defendant.
    [Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 35–50; Dec. Dig. § 6.*]

Appeal from District Court, Aransas County; F. G. Chambliss, Judge.

Action by Francis J. Heney against Mary J. Baker. From a judgment for plaintiff, defendant appeals. Affirmed in part, and reversed and rendered in part. On motion, former opinion modified, so as to affirm in full.

W. D. Love, of Uvalde, for appellant. Robt. W. Stayton, of Corpus Christi, and John B. Eddins and Wm. H. Russell, both of Rockport, for appellee.

CARL, J. Appellee, Francis J. Heney, brought this suit in trespass to try title, against appellant, Mary J. Baker, for about 70 acres of land, a part of the Travis Henderson subdivision of the John W. Paup survey in Aransas county. This Henderson subdivision is alleged to contain 598.74 acres, and Heney had become the owner of an undivided one-third, and Henderson had sold the other two-thirds to Sartain & Montgomery. Heney and Sartain & Montgomery had partitioned, Heney getting the eastern portion which conflicts with the John E. Elgin

survey No. 4. S. F. 6919. Appellant answered by general demurrer, plea of not guilty, and specially pleaded title in herself under the Elgin patent. She also alleged a compromise agreement between herself and Travis Henderson relative to the land in controversy, and impleaded him, asking for different forms of relief in her alternative prayer. The trial was before the court, and judgment was in favor of appellee, Heney, for the land and in favor of defendant, Henderson, and Mary J. Baker appeals.

Two matters claim our attention: (1) Does the John W. Paup survey conflict with the Elgin survey? (2) And in the event the Paup survey conflicts with the Elgin survey, did the compromise settlement between Travis Henderson and Mary J. Baker settle such conflicting claims, and, if so, is the appellee bound thereby?

Appellant contends that the survey of the Paup land was an office survey, and that the lines were not actually run out, and that by reversing the calls and starting from the west side instead of the east side, there would be a vacancy to make room for the Elgin survey. The surrounding surveys are as follows:

[1] The A. Bergara survey has a marked corner, and appellant contends that we should reverse the calls and take the east line of the Bergara survey as the starting point. Thus by course and distance we would stop the north line of the Paup at about the west line of the Elgin. This would leave about 666.5 varas between the Paup and Crocoline surveys which would accommodate the Elgin junior survey. But the Paup survey calls for the southeast corner of the Wil-

liamson survey No. 34 as the beginning point, on the west boundary line of the Crocoline. Thence with this (Crocoline) survey to its southwest corner; thence west to northwest corner of the Hond survey; thence south with Hond to north boundary line of Thomas T. Williamson survey No. 35; thence west with said Williamson survey to a point on the Fessenden survey; thence to northeast corner of Fessenden; thence west 1,039.93 varas to Bergara survey; thence north to Williamson survey No. 34; thence east with said survey 2,533.74 varas to the place of beginning. The Crocoline, Hond, and Williamson No. 35 are bay front surveys, and well established. So are the Bergara and Fessenden surveys and Williamson No. 34. All the surveys on the east meander the bay. The Bergara, Fessenden, and two Williamson surveys were made at the same time the Paup survey was made. The Crocoline calls for "thence, leaving the bay due west 1228½ varas to southwest corner; thence north 1634 1/10 varas to the northwest corner." The northwest corner of the Crocoline is where it intersects the south line of the Carper survey, and Percival, the surveyor, says that he there found some old cuttings, and that this point is accepted as the northwest corner of the Crocoline. The southwest corner of the Carper survey is marked by a stake and mound in the prairie. The Crocoline survey was patented in 1858, and calls for the southeast corner of the Carper as its northeast corner, which is identified by two bearing trees still on the ground. The Bergara survey on the west is located by an established corner. The established marked lines of other surveys may as well be the subject of calls as any other object. Bolton v. Lann, 16 Tex. 96-110; Ridgell v. Atherton, 107 S. W. 129; Johns v. Schutz, 47 Tex. 578; Buford v. Gray, 51 Tex. 331–335; Booth v. Stripplemann, 26 Tex. 436. And likewise a survey may be located by surrounding surveys. Longoria v. Shaeffer, 77 Tex. 547, 14 S. W. 160. Nor does it make any difference that there is an excess in one survey where there is a common marked corner. Bunton v. Cardwell, 53 Tex. 408.

[2] In locating land recourse will be had: First, to natural objects; second, to artificial objects; and, third, to course and distance. Bolton v. Lann, 16 Tex. 96; Ridgell v. Atherton, 107 S. W. 129. Thus it will be seen that of the three, course and distance is of the least importance.

Since the surveys called for by the Paup are established surveys, and have marked and recognized corners, we conclude that there was no land to be covered by the Elgin survey. The mere fact that by running course and distance would leave an excess would not alter the case; for we have seen that natural and artificial objects both are superior to calls for course and distance.

And since course and distance must yield, the excess, if any, would belong to the Paup survey. At any rate, not to the Elgin, because there was no vacancy there to be patented.

[3] Appellant contends that an actual survey of the Paup tract was never made, and yet maintains that by reversing calls and starting from the Bergara, which is well established and marked, east to proper distance, it would leave an excess so as to accommodate the Elgin survey. Counsel overlook the fact that in order to reverse calls a survey must actually be made. Ayers v. Lancaster, 64 Tex. 305. The calls in the Paup survey start from the east side or Crocoline survey, and it is desired to reverse the calls and start from the Bergara on the west so as to leave the Elgin tract subject to patent. That calls of a survey actually made may be reversed there is no doubt; but appellant says this Paup survey was never made. How then can we reverse the calls? And if we did so, we do not see that it would alter the situation, because the Bergara survey is fixed and the Paup calls for the Crocoline as its east boundary line, an established line, which would control the call for distance. Here we have both natural and artificial objects, either of which is of superior importance to course and distance.

Travis Henderson bought this land February 24, 1891, and sold an undivided one-third interest in it to John H. Traylor February 15, 1894. Traylor sold to Heney September 19, 1895. Travis Henderson sold his remaining two-thirds interest to Sartain & Montgomery, March 17, 1910, while the joint power of attorney executed by Travis Henderson and Miss Mary J. Baker, authorizing J. M. Hoopes to sell this 71.7 acres for the purpose of settlement, was dated February 5, 1910. That power of attorney to Hoopes runs in part as follows: "Know all men by these presents: That whereas, Travis Henderson, of Lamar county, Texas, claims title to certain lands hereinafter described, by purchase from the heirs of J. W. Paup, and whereas Miss Mary J. Baker, a feme sole, of Cleveland, Ohio, claims title to the same land, by purchase direct from the state of Texas; and whereas said parties are anxious to settle their respective claims to said [land] without the delay and expense incident to litigation; and whereas, there is yet due the state of Texas, from said Miss Mary J. Baker, about $2.00 per acre on said land; and whereas, she is willing to pay the balance due on said land together with the taxes due thereon, and is also willing to accept as her part from the proceeds of the sale of said lands the sum of $15.00 per acre, less the sum which may be due as above mentioned; and whereas, the said Henderson is willing to accept for his interest in said land the sum of $15.00 per acre." Then follows a description of the 71.7 acres of land in controversy by metes and bounds, and it is recited that there was pending a controversy as to the ownership between Henderson and Miss Baker, and that this arrangement was made to avoid and settle litigation. It directs how the proceeds shall be divided, $15 per acre to Miss Baker, and $15 to Henderson, Miss Baker to pay about $2 per acre to the state.

[4] This is not a power of attorney coupled with an interest, because the power and the interest are not centered in the same person. Hoopes, the attorney in fact, has no interest whatsoever in the property which he is called upon to sell. Where the right or authority to do the act is connected with or flows from an interest in the subject on which the power is to be exercised, the power is said to be "coupled with an interest," but where it is disconnected from any interest of the donee in the subject-matter, it is a naked power. Tinsley v. Dowell, 87 Tex. 23, 26 S. W. 946; Daugherty v. Moon, 59 Tex. 397; Griffith v. Maxfield, 66 Ark. 513, 51 S. W. 832. The power of attorney was not coupled with an interest, and, as such, could be revoked. But, as a contract of compromise and settlement, it has a peculiar quality which we do not think can be ignored or set aside ex parte.

[5] It will be seen that this is not a contract to convey the land, or any part of it, to either party, and would give Miss Baker no right to sue for the land or an interest therein. On the contrary, it contemplates a sale for the purpose of dividing the proceeds. Henderson could not bind his cotenant, or tenant in common, Heney. Where a tenant in common contracts to convey a designated portion of an undivided tract of land and is unable to do so by reason of such portion falling to another in the partition, the remedy of the purchaser is a suit for damages. Dorn v. Dunham, 24 Tex. 377; Rutherford et al. v. Stamper et al., 60 Tex. 447.

[6] Under the compromise agreement between Mary J. Baker and Travis Henderson, the land was to be sold at not less than $30 per acre, and the proceeds divided, $15 per acre to each. But, out of her part, Miss Baker was to pay $2 per acre due the state, which she did pay. The 71.7 acres of land would come to about $2,151, and, after deducting the amount due the state from Miss Baker's share, would leave her something more than $600. She pleaded improvements made in good faith, but in her prayer asked for only $600.

Therefore, since we hold that there was no vacancy where the Elgin survey was located, it follows that, as to appellee, Francis J. Heney, the judgment will be affirmed; but as between the defendants below, Mary J. Baker and Travis Henderson, the judgment of the district court is reversed, and judgment here rendered in favor of Mary J. Baker against Travis Henderson for the sum

of $600, together with legal interest thereon from March 17, 1910, until paid, and all costs.

Affirmed in part, and reversed and rendered in part.

### Supplemental Opinion.

Upon further investigation of this case we conclude that there is no sufficient assignment of error justifying us in rendering judgment against Travis Henderson for $600 in favor of Mary J. Baker, or for any sum whatever, and therefore set aside the judgment heretofore rendered in this case, and here render judgment affirming in all things the judgment of the trial court.

Judgment affirmed in full.