SUPERIOR OIL CO. et al. v. STANOLIND
OIL & GAS CO. et al.

No. 2789.

Eleventh Court of Civil Appeals of Texas.
Eastland.

April 28, 1950.

Williams, Lee & Kennerly, Houston, W. B. Wagner, Sr., W. B. Wagner, Jr., Houston, Stubbeman, McRae & Sealy, Midland, for appellants.

Turner, Rodgers, Winn, Scurlock & Terry, Dallas, P. Edward Ponder, Sweetwater, John Sentell, Snyder, H. J. Brice, J. F. O'Brian, Snyder, for appellees.

GRISSOM, Chief Justice.

Stanolind Oil & Gas Company and R. H. Jordan, in a trial to the court, obtained a judgment awarding them title and possession of the surface and half the minerals in section 579, Block 97, H. & T. C. Ry. Co. Survey in Scurry and Borden Counties against The Superior Oil Company, Intex Oil Company, Olsen Drilling Company, R. E. Boyle and others. The above named defendants have appealed. The court decreed that defendants Boyle, Knickerbocker, Grady Vaughn III Trust, Adams, Tyson, Jones and the Dodsons are the owners of certain minerals in said section, in proportions set out in the judgment, and that an oil and gas lease executed by the Dodsons to Anderson on March 3, 1944, terminated on February 3, 1949, because the then owners of the lease failed to pay rentals on or before that date. It was further adjudged that Stanolind is the owner and entitled to possession of a leasehold estate in seven-eighths of the minerals in a three-fourths interest in said land, by virtue of an oil and gas lease executed by R. H. Jordan on March 9, 1949. Superior and Intex were also enjoined from interfering with the title and possession of Jordan and Stanolind.

On March 3, 1944, J. O. Dodson, Ivan Dodson, Clare Dodson Smith and Ela V. Cooper executed an oil and gas lease to

P. W. Anderson on said section. Said lessors will be referred to as the Dodsons. This lease was acquired by Superior and Intex in 1948. Appellees assert that said March 3, 1944 lease terminated because the rentals were not tendered on or before February 3, 1949, which was the anniversary of a dry hole drilled February 3, 1945. The trial court so held. Appellants contend that in 1949 the anniversary date for payment of rent was March 3rd, not February 3rd. Appellants tendered payment of the annual delay rentals on February 5, 1949 and before March 3, 1949 commenced drilling a second well. Whether rent was due on or before February 3rd or March 3, 1949, is the principal question to be decided.

The Dodson-Anderson lease provides (1) for a primary term of ten years from its date, March 3, 1944. Other paragraphs material to a decision of the question are the following:

(2) "If no well be commenced on said land on or before the 3rd day of March, 1945 this lease shall terminate * * * unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Snyder National Bank at Snyder, Texas, * * * the sum of Three Hundred Twenty and No/100 Dollars which shall operate as rental and cover the privilege of deferring the commencement of a well for twelve (12) months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

(3) "Should the first well drilled on the above described land be a dry hole, then and in that event if a second well is not commenced on said land within twelve months thereafter, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months, shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals, as before provided, that the last preceding paragraph hereof, shall continue in force just as though there had been no interruption in the rental payments."

The lease was dated March 3, 1944. Lessee or his assignee, to avoid termination of the lease, was required to pay rent or commence drilling a well on or before March 3, 1945. On January 10, 1945, Richfield Oil Corporation, then the owner of the lease, commenced drilling a well. On February 3, 1945, said well was a dry hole. Before February 3, 1946, or, stated differently, within twelve months after drilling the dry hole, Richfield paid the annual delay rental to said Snyder bank and had it execute a receipt reciting that the $320.00 deposited was "in payment of delay rentals for the period of February 3, 1946 to February 3, 1947 due under" the Dodson-Anderson lease. Before February 3, 1947, Richfield again paid the annual rental to the bank and took a receipt from the bank, prepared by Richfield, showing that said payment of rent covered the period from February 3, 1947 to February 3, 1948. Before February 3, 1948, Richfield again paid the rentals and had the bank execute a receipt which recited that the $320.00 was in payment of rent from February 3, 1948 to February 3, 1949, due under the Anderson lease. Said receipts showed copies were sent to "J. O. Dodson, et al." at Snyder. No rent was paid on or before February 3, 1949 and a second well had not then been commenced. On February 5, 1949, Superior and Intex, who had purchased the lease from Richfield in December, 1948, tendered payment of the annual rentals to said bank but it refused to accept same, under instructions from the lessors, on the ground that the lease had terminated by reason of the failure of Superior and Intex to pay the rent two days earlier, that is, on February 3, 1949. See 31-A Tex.Jur. 285. Before March 3, 1949, Superior and Intex commenced drilling a second well on the section.

Appellants and appellees agree that appellants were required to resume payment of rent, or commence a second well, within twelve months after drilling the dry hole, but appellants contend that when payment of rent was resumed within twelve months after the dry hole, that is, on or before February 3, 1946, that thereafter the anniversary date for payment of rent was the date stated in paragraph 2 of the lease, to wit, March 3rd. Appellants say that commencement of the first well by Richfield before March 3, 1945 kept the lease alive until March 3, 1946. That the only effect of the dry hole was to compel the lessee to resume payment of rent within twelve months after the dry hole, to wit, on or before February 3, 1946. Appellants say that payment of rent before February 3, 1946 kept the lease alive until March 3, 1947. In other words, appellants say that the only change in the provisions of paragraph 2 caused by drilling a dry hole was to require the lessees to resume payment of rentals within twelve months after the dry hole. Appellants say that, thereupon, the original rental paying date, March 3rd, provided for in paragraph 2, was then reinstated and the date thereafter for annual payment of rentals was March 3rd, instead of February 3rd. Appellants argue that any other interpretation does not give effect to all the provisions of the lease and that a different interpretation would give no effect to the last sentence of paragraph 3. That sentence provides that upon resumption of payment of rentals, within twelve months after the dry hole, paragraph 2 shall continue in force as though there had been no interruption in rental payments.

Appellees say that giving effect to all provisions of the lease requires the interpretation that the parties to said lease intended for the anniversary date of the dry hole to thereafter be the date for payment of rentals or commencement of a second well. They interpret said last sentence of paragraph three to mean that every twelve months after the date of the dry hole the lessee must drill or pay, as provided in paragraph two, otherwise, the lease should terminate. The trial court so interpreted the lease and also found that the Dodsons and Richfield had so construed it and that appellants were bound by that construction.

After the dry hole, we think, the anniversary date for payment of rentals to cover the privilege of deferring commencement of a well for twelve months was February 3rd. Commencement of a well by Richfield before March 3, 1945 would have kept said lease alive until March 3, 1946 but for the dry hole. The dry hole clause plainly provides that if a second well is not commenced within twelve months after drilling the dry hole the lease shall terminate, unless the lessee within twelve months after the dry hole shall resume payment of rentals in the same "amount" and in the same "manner hereinbefore provided." In other words, in the absence of commencing a second well, lessee, to prevent termination of the lease, was required, within twelve months after the dry hole, to pay the lessor or deposit to lessor's credit in said Snyder bank $320.00. That was the "amount" and "manner" thereinbefore provided in paragraph 2. We think the last sentence of paragraph three simply means that lessee having resumed payment of rent within twelve months after the dry hole, must thereafter, to prevent termination of the lease, pay rent every twelve months for the privilege of deferring commencement of a well during the following twelve months. It is the payment of rentals or commencement of a well every twelve months, not the March 3rd anniversary date, that is emphasized and intended to control. Commencement of a well before March 3, 1946 did not keep the lease alive until March 3, 1947 because a dry hole was drilled on February 3, 1945. The lease plainly and expressly required commencement of a second well or payment of rental within twelve months after the date of the dry hole. The dry hole was drilled February 3, 1945. Payment of rent within twelve months after the date of the dry hole did not keep the lease alive for thirteen months. After drilling the dry hole, as before, payment of rent was in lieu of drilling; rent was paid for the privilege of deferring commencement of a well for twelve months. The lease said so. After the dry hole, commencement of a well or

payment of rent every twelve months was required. Neither action kept the lease alive for more than twelve months. We think this intention is plain when the lease is considered as a whole and effect given to all its language. See 31-A Tex.Jur. 181.

█ This conclusion requires affirmance of the judgment, except as to the interest of Boyle, which will be hereafter discussed. We are of the opinion that the lease is not ambiguous and requires the interpretation stated above. However, if it should be held that the lease is ambiguous, we would be required to pass upon other questions presented. To prevent the delay incident to such a decision, we hold that if the lease is ambiguous the parties construed it to mean that drilling of a dry hole on February 3, 1945 fixed the date thereafter for annual payment of rentals as on or before February 3rd, instead of March 3rd, and that appellants are bound by such construction. The evidence is sufficient to support the trial court's findings to such effect and we adopt them. 31-A Tex.Jur. 181; Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 1088, 85 A.L.R. 391.

When Superior and Intex acquired the lease they knew that it provided that if a dry hole should be drilled they would be required to commence drilling a second well or pay rent within twelve months thereafter and to drill or pay every twelve months thereafter to prevent termination of the lease. Superior and Intex had the duty of ascertaining whether or not a dry hole had been drilled, its date and whether or not rent had been paid or a second well commenced within twelve months thereafter. Superior and Intex had the duty to make inquiry and a proper inquiry would have led to knowledge of the facts indicated and of the previous construction of the dry hole clause by their predecessors and the lessor.

In October, 1948, Richfield Oil Corporation published a notice inviting bids for leases owned by it, including the lease in question. This notice advised prospective bidders that the original leases, assignments, title opinions and other title data possessed by Richfield were available for their inspection at Richfield's Midland office and that all assignments of leases would be "without warranty of any kind." Prospective bidders were advised that they should carefully read and consider the documents of record affecting the land, examine the title status and familiarize themselves with all of the conditions relative thereto. Prospective bidders were notified that each bidder must satisfy himself on all matters concerning the leases independently of any information or assistance furnished by Richfield. Superior and Intex bought the lease together. On December 1, 1948, Richfield assigned the Dodson-Anderson lease to Intex. On December 30, 1948, Intex assigned an undivided one-half interest to Superior. On December 15, 1948, Richfield delivered to Intex files containing the rental receipt of February 3, 1948 showing payment of rent from February 3rd to February 3rd, instead of March 3rd to March 3rd. On January 14, 1949, Richfield delivered to Superior files which contained the rental receipts of February 3, 1946 and 1947. Therefore, before the rentals were due on February 3, 1949, Intex and Superior had in their possession the Richfield files which contained the rental receipts reciting that the annual rental payments for the three years preceding February 3, 1949 were paid on or before February 3rd of each of said years for the privilege of deferring commencement of a well from February 3rd of one year to February 3rd of the following year, and disclosing that the lessors and Richfield had construed the lease to require rentals to be paid on or before February 3rd of each year after the dry hole. Superior and Intex were invited by Richfield to look at their records before they bought.

█ The records of the Railroad Commission show the date of the dry hole. Since the dry hole provision of the lease put Superior and Intex on notice that drilling of a dry hole might change the date for payment of rentals they were required to make inquiry. We sustain the trial court's conclusion that if proper inquiry had been made, appellants would have learned the facts.

"In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained. Means of knowledge with the duty of using them are in equity equivalent to knowledge itself." Hexter v. Pratt, Tex.Com.App., 10 S.W. 2d 692, 693. See also 66 C.J. 1115; Hill v. Stanolind Oil & Gas Co., 119 Colo. 477, 205 P.2d 643, 650; Brown v. Hart, Tex.Civ. App., 43 S.W.2d 274; 31 Tex.Jur. 362.

We sustain the finding that appellants were not innocent purchasers. See Houston Oil Company of Texas v. Hayden, 104 Tex. 175, 135 S.W. 1149, 1153; Brush v. Ware, 15 Pet. 93, 40 U.S. 93, 10 L.Ed. 672.

Appellants say the court erred in holding that Boyle's acceptance of rent, after termination of the lease by reason of the failure to pay rent on or before February 3, 1949, did not continue said lease in force as to Boyle's undivided 1/16th, or 40 acres, interest in the leasehold. $20.00 was deposited in the Snyder bank to Boyle's credit after February 3, 1949 in payment of the annual rent due Boyle. On February 11, 1949, Boyle executed a receipt acknowledging payment of the rental due him from March 3, 1949 to March 3, 1950. The receipt recited that Boyle ratified and confirmed the lease as valid and subsisting and agreed that said amount was timely paid. The receipt was sent by Boyle to Superior.

On March 9, 1949, Jordan leased all of section 579 to Stanolind Oil & Gas Company. On August 9, 1947, the Dodsons had executed a warranty deed in which they conveyed to R. H. Jordan all the surface and half the minerals in section 579. The conveyance was subject to the prior Dodson-Anderson lease. The deed contained a power of attorney from the Dodsons authorizing Jordan, when the land or any part was not leased to execute an oil and gas lease, or leases, on all, or any part of the section, that is, to lease the minerals therein conveyed to Jordan and the one-half of the minerals retained by the Dodsons. The instrument provided that if Jordan made such a lease, half of the bonus, rentals and royalties should be paid to the owners of such reserved interest, or deposited to their credit in said Snyder bank. The power of attorney provided, "if, when and as (the) aforesaid land or any portion thereof may not be under lease for any reason, then and in that event the grantee herein (Jordan) his heirs or assigns, are given and granted the right and power to make and deliver oil, gas and mineral lease and/or leases covering said land or any part thereof, for such length of time and for such down payment and rentals as he or they may desire without the joinder of grantors, nor our heirs or assigns * * *."

After the Dodsons executed said deed and power of attorney to Jordan, Ivan Dodson, one of the four lessors in the Dodson-Anderson lease, in December, 1948, executed a mineral deed conveying to R. E. Boyle an undivided 40/640ths, or an undivided 1/16th, interest in all the oil, gas and other minerals in or that might be produced from section 579. Said deed recited that it was subject to the rights of any prior lessee, or his assigns, under any valid lease. It stated that Boyle should receive the granted undivided interest "in and to all bonuses, rents, royalties and other benefits which may accrue under the terms of said lease insofar as it covers the above described land from and after the date hereof, precisely as if the Grantee herein had been at the date of the making of said lease the owner of a similar undivided interest in and to the lands described and Grantee one of the lessors therein."

Appellants say the Dodsons' deed to Jordan, containing the power aforesaid, did not give Jordan the exclusive right to lease and did not deprive the Dodsons or their assigns, of the right to lease the minerals retained by them. They also say that Jordan was not empowered to lease any portion of said section that was under lease and that Boyle, by acceptance of his rent on February 11th and execution of the receipt, prevented termination of the lease as to his 40 acre interest, and, therefore, that Boyle's 40 acre interest was effectively under lease to Superior and Intex after February 11th and Jordan could not, on March 9, 1949, execute a valid lease to Stanolind on Boyle's 40 acre interest. Appellants' contention may be correct if

Boyle had the power to execute a lease on his interest. However, if the power of attorney conveyed to Jordan the exclusive right to lease, neither the Dodsons nor their assigns could thereafter lease their interests. The power of attorney conveyed to Jordan a power coupled with an interest.

"A power coupled with an interest is a power accompanied by or connected with an interest in the property subject to the power." 49 C.J. 1252. See also Jones v. Guy, Tex.Civ.App., 71 S.W.2d 913, 914, Writ Dis.; Baker v. Heney, Tex.Civ.App., 166 S.W. 19, 21; 2 C.J.S., Agency, § 75, page 1161; Hunt v. Rousmanier's Adm'rs, 8 Wheat. 174, 5 L.Ed. 589; Armstrong v. Moore, 59 Tex. 646, 648; Daugherty v. Moon, 59 Tex. 397, 399.

"In order that a power may be irrevocable because coupled with an interest, it is necessary that the interest shall be in the subject matter of the power, and not in the proceeds which will arise from the exercise of the power. The person clothed with the power must derive, under the instrument creating it or from the nature of the relation, a present or future interest in the thing or subject itself on which the power is to be exercised, and not merely that which is produced by the exercise of the power. The question is, does the agent have an interest or estate in the subject matter of the agency independent of the power conferred, or does the interest or estate accrue by or after the exercise of the power conferred. If the former, the agency is coupled with an interest; if the latter, it is not. It has also been laid down that the estate or interest vested or created in the agent must be such as the agent could transfer or convey in his own name in the event of the death of the principal." 2 Am.Jur. 62, Sec. 78. See also 41 Am.Jur. 808; 2 Tex.Jur. 630, 631; Drake v. O'Brien, 99 W.Va. 582, 130 S.E. 276, 278; Angle v. Marshall, 55 W.Va. 671, 47 S.E. 882, 886; Sulphur Mines Co. v. Thompson's Heirs, 93 Va. 293, 25 S.E. 232, 235; Hunt v. Rousmanier's Adm'rs, 8 Wheat. 174, 204, 5 L.Ed. 589; 25 Tex. Law Rev. 18.

The deed and power executed by the Dodsons to Jordan, in the same instrument, conveyed to Jordan an interest in said section, that is, all of the surface and one-half of the minerals, and also authorized him, when said section or any part was not leased, to make and deliver oil and gas leases covering said section, or any part thereof, for the length of time and for the down payment and rentals Jordan might desire, without the joinder of the Dodsons, or their heirs or assigns.

■ When a power of attorney is coupled with an interest it is "not revocable by the act, condition, or death of the principal before the expiration of the interest * * *." 2 Am.Jur. 61.

In Bowles v. Bryan, Tex.Com.App., 247 S.W. 276, 277, the court said: "The general rule is that a power of attorney, coupled with an interest, cannot be revoked by the grantor of the power. Daugherty v. Moon, 59 Tex. [397], 399. Under the facts in this case the sale by Deck Martin to defendants was an attempt at revocation."

"Where, in addition to his authority, an agent is given an interest in the subject matter of the power itself, his authority is not revocable by the act of the principal alone." 2 C.J.S., Agency, § 75, page 1159. See Wells v. Littlefield, 59 Tex. 556, 562.

■ A power coupled with an interest is construed more liberally in favor of the grant than a power not coupled with an interest. We conclude that Jordan had the exclusive right to lease the section. In this connection, see Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543, 544 and Brown v. Smith, 141 Tex. 425, 430, 174 S.W.2d 43, 46.

■ Jordan was given the exclusive right and power to lease the section. No such right was reserved by the Dodsons. The power was irrevocable. An attempt by the Dodsons, or their assigns, to thereafter lease the land would have constituted an attempt to revoke the power and would have been ineffective. Wells v. Littlefield, 59 Tex. 556, 563. The lease terminated at

midnight February 3, 1949. Thereafter Boyle could not have leased the interest which he acquired from Ivan Dodson. He could not revive the terminated lease as to his interest by accepting the late rentals and acknowledging receipt thereof on February 11th. Mitchell v. Simms, Tex.Com.App., 63 S.W.2d 371. Therefore, Jordan had the right and power to lease the entire section to Stanolind on March 9th.

The judgment is affirmed.